Juan Lino GARZA, et al., Appellants,

v.

Elizabeth H. Coates MADDUX,
et al., Appellees.

No. 13–97–109–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 4, 1999.

Rehearing Overruled April 8, 1999.

Houston, Donald B. Edwards, Smith & Edwards, Corpus Christi, for appellants.

Laura H. Burney, San Antonio, Elizabeth N. Miller, Scott, Douglas, Luton & McConnico, Austin, Philip M. Hall, Prichard, Peeler, Cartwright & Hall, Corpus Christi, Francisco J. Enriquez, McAllen, Luke C. Kellogg, San Antonio, Casey L. Dobson, Scott, Douglass & McConnico, Austin, Joseph Cohn, Jr., Gregory T. Perkes, Wood, Burney, Cohn & Viles, Dan c. Perry, San Antonio, Francisco J. Rodriguez, Rodriguez, Prunedo, Tovar, Enriquez & Calvillo, McAllen, Jack Paul Leon, Jon Christian Amberson, San Antonio, Bruce W. Claycombe, Geary, Porter & Donovan, Dallas, Robert R. Kincaid, Cedar Park, Richard L. Merrill, Fabio & Merrill, Steven B. Harris, Boyer, Ewing & Harris, Stephen L. Moll, Gardere, Wynne, Sewell & Riggs, Houston, Frank E. Weathered, Dunn & Weathered, Corpus Christi, Nicole Therese Leboeuf, Geary, Porter & Donovan, Dallas, for appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION ON MOTION FOR REHEARING

HINOJOSA, Justice.

We issued our original opinion in this case on August 13, 1998. Appellants, Juan Lino Garza, et al., (collectively the "Garzas")[1] subsequently filed a motion for rehearing. We deny the Garzas' motion for rehearing, withdraw our opinion of August 13, 1998, and substitute the following as the opinion of the Court.

This is an appeal from a summary judgment regarding mineral interests. The Garzas sued Elizabeth H. Coates Maddux, et al. (collectively "appellees"),[2] alleging multi-

Craig S. Smith, Smith & Edwards, Corpus Christi, Ramon Garcia, Edinburg, George L. Willingham, San Antonio, Michael Jones,

1. Appellants include Juan Lino Garza, Romulo Garza, and Guadalupe Garza, Jr., individually and as trustees and beneficiaries of the Garza Energy Trust, Amparo Salinas Garza, individually, Maria Rita Garza Carrales, Elma Garza Cantu, Jose Carmen Garza (deceased), Aida A. Garza Lopez, and Eduardo Garza, individually and as beneficiaries of the Garza Energy Trust.

2. Appellees include Elizabeth H. Coates Maddux, independent executrix of the estate of George H.

Coates, deceased, Barry Coates Roberts and George L. Stieren, trustees of the Coates Energy Trust, being the successors to Elizabeth H. Coates Maddux, Arthur T. Stieren, Jr. and Betty Ann Stieren Kelso, as trustees of the Coates Energy Trust, Elizabeth H. Coates Maddux, Arthur T. Stieren, Jr. and Betty Ann Stieren Kelso, beneficiaries of the Coates Energy Trust, and Republic Royalty Company, successor to Newmont Oil

ple tort claims, breaches of certain covenants, and drainage. The Garzas also sought reformation of a 1920 deed and declaratory judgment that they own the mineral rights in approximately 108 acres of land in Hidalgo County, Texas. Appellees filed at least eight motions for summary judgment covering all of the Garzas' allegations. The trial court granted summary judgment as to the title claims[3] and severed the remainder of the claims into a new cause number, thus making the summary judgment final as to all parties. The new cause was then abated pending the finality of the title questions. The Garzas challenge the summary judgment by seventeen points of error.[4] We affirm.

## 1. FACTUAL BACKGROUND

Before 1920, Porciones 73, 74, and 75,[5] Reynosa Jurisdiction, in Hidalgo County were undivided among various landowners including the Garzas' predecessors-in-interest, the Salinas family. In 1920, all owners conveyed their land to George Schunior. No documentation explains why this conveyance occurred or describes the acreage conveyed by each owner. Schunior had the property surveyed by E.M. Card and as a result, a survey plat map of the Schunior Subdivision was prepared and recorded in July 1920. In August 1920, a corrected map was filed in place of the original map. This map delineates the individual shares of ownership in the three Porciones. Schunior is the common source of all deeds at issue in this case.

This case concerns a dispute over a portion of the boundary between Shares 13 and 15. The plat map reflects an uneven boundary line separating the shares with Share 15 north of the boundary line and Share 13 south of the line. The Garzas contend a fence accurately divides the two shares, and appellees argue the eastern portion of the fence is actually north of the correct boundary line. The area between the fence and the boundary line is approximately 190 acres. The Garzas claim approximately 108 of those acres through their predecessors-in-interest.

### a. The Coates' Chain of Title

In 1920, Schunior conveyed Share 15 by recorded deed to Alex Champion, appellees'

---

Company and Sasi Minerals Company (collectively the "Coates").

Additional appellees include Coastal Oil and Gas Corporation, individually and as successor to Coastal States Gas Producing Company, Coastal–Greenbrier 1988 Joint Venture, Coastal 1981 Developmental Joint Venture, Greenbrier Operating · Company, Greenbrier 68 Limited, Greenbrier 69 Limited, Greenbrier 70 Limited, Greenbrier 71 Limited, Greenbrier 74 Limited, Adobe Resources Corporation, Adobe Oil & Gas Corporation, Hanover Petroleum Corporation, Total Petroleum Corporation, and Peter Paul Petroleum Company, Inc. (collectively "Coastal"). Robert Kincaid is also an appellee.

3. The trial court granted the following motions for summary judgment:

   (a) Motion for Partial Summary Judgment Against Plaintiffs by Defendants Coastal Oil & Gas Corporation, Coastal–Greenbrier 1988 Joint Venture, and Coastal 1981 Development Joint Venture—joined by the Coates;

   (b) Coastal Oil and Gas Corporation, et al.'s Motion for Partial Summary Judgment Denying Plaintiffs' Claim for Declaratory Relief Altering the Deed from Eleuterio Salinas to Tom Vessels, Jr.—joined by the Coates;

   (c) Coastal Oil and Gas Corporation, et al.'s Motion for Partial Summary Judgment Denying Plaintiffs' Claims Regarding the Loca-

tion of the Disputed Property—joined by the Coates; and

   (d) Coastal Oil and Gas Corporation, et al.'s Motion for Partial Summary Judgment Denying Plaintiffs' Adverse Possession Claims to the Mineral Estate of the Disputed Acreage—joined by the Coates.

4. Points one and two claim error in granting summary judgment against the Garzas' adverse possession claims. Three through five relate to summary judgment granted on the basis of a 1939 quitclaim deed. Six through eight claim error in granting summary judgment against the Garzas' claims of recognition and acquiescence, presumptive grant, and superior record title out of a common source, respectively. The ninth point asserts error in the trial court's refusal to reform the 1939 quitclaim deed. Point ten claims error regarding the location of the disputed property. Eleven through thirteen claim error if summary judgment was granted on any of the various defenses asserted by the Coates. Fourteen through sixteen attack specific motions for summary judgment, and seventeen is a general assertion of error in granting summary judgment.

5. Spanish or Mexican land grants nos. 73, 74, and 75. See Strong v. Delhi–Taylor Oil Corp., 405 S.W.2d 351, 356–61 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.).

predecessor-in-interest. The deed describes the property as

One Thousand Eight Hundred Forty and %₀ (1840.6) acres of land, more or less, more particularly described as Share numbered Fifteen (15) of a subdivision of lands in Porciones Seventy–Three, Seventy–Four and Seventy–Five known as the "Schunior Subdivision" according to map or plat of said subdivision of record in the office of the County Clerk of Hidalgo County, Texas, here referred to for a more particular description and location of said land, together with all and singular, the hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Schunior signed the deed on July 28, 1920, and it was recorded on September 10, 1920. The corrected plat map of August 1920 made no changes to this tract of land.

In April 1932, Alex Champion conveyed by warranty deed to his wife, T.M. Champion, "[a]ll of Share No. 15, containing approximately 1840.6 acres . . . in that certain subdivision in Hidalgo County, Texas . . . being the Schunior Subdivision . . . said map of said subdivision being recorded in Vol. 2, page 23 of the Map Records of said County." On October 5, 1932, Alex Champion and T.M. Champion then conveyed their interests in Share 15 to A.H. Fernandez, Trustee. That same day, Fernandez quitclaimed the property to Juan Jose Champion. Property descriptions within these deeds conform with descriptions in previous deeds.

On November 13, 1937, Juan Jose Champion and Amelia L. de Champion conveyed by quitclaim deed to Tom Vessels, Jr. "[a]ll that certain piece, tract or parcel of land known as Share 15 of the Schunior Subdivision of Porciones Nos. 73, 74, 75, Ancient Jurisdiction of Reynosa, Hidalgo County, Texas, containing 1840 acres more or less." The same day, Vessels executed a royalty contract conveying to Juan Jose Champion a ¹⁄₆₄ royalty interest in

all of the oil, gas and other minerals in and under the following described tract of land, situated in Hidalgo county, Texas, to-wit: All that certain tract, piece or parcel of land known as Share No. 15 of the Schunior Subdivision of Porciones Nos. 73, 74,

and 75, Ancient Jurisdiction of Reynosa, Hidalgo County, Texas, containing 1840 acres more or less[.]

Two days later, Vessels entered into an oil, gas, and mineral lease with Sun Oil Co. for Share 15. With the exception of stating the acreage is "1840.6 acres more or less," the description in the lease of Share 15 is as set forth in the two previous deeds. In connection with this lease, Vessels executed a document stating that Share 15 consisted of 1840.6 acres, more or less, and that all state, county, and special taxes had been paid to date.

On January 20, 1938, Vessels conveyed by warranty deed to George H. Coates an undivided ¾ of all of Share 15, as described above. This conveyance was subject to: (1) the ¹⁄₆₄ royalty interest previously conveyed to Juan Jose Champion and (2) the Sun Oil Co. lease. Vessels retained the remaining interest in Share 15. In April 1939, Eleuterio and Miguel Salinas, the Garzas' predecessors-in-interest, quitclaimed to Vessels:

All that certain tract, piece or parcel of land known as Share No. 15 of the Schunior Subdivision of Porciones Nos. 73, 74, and 75, Ancient Jurisdiction of Reynosa, Hidalgo County, Texas, containing 1840 acres, more or less, including all rights heretofore claimed or owned by us in any fences on or around the premises.

The above described Share or Tract No. 15, being more fully described and delineated on a certain map and plat of agreed partition made on or about August 20th, 1920, by E.M. Card, Civil Engineer, and shown thereon that the acreage of said Share No. 15 being 1840.6 acres. Reference to said map and plat now being made for all purpose of aider of description.

The deed further stated that "neither [Eleuterio or Miguel Salinas], nor any person or persons claiming under [them], shall at any time hereafter have or claim any right, title or interest in or to said property, or any part thereof."

In April 1946, Coates and Vessels executed a warranty deed conveying the surface estate of Share 15, as previously described, to M.D.

Cavazos.[6] The deed reserved the undivided mineral interests, ¾ to Coates and ¼ to Vessels. Coates and Vessels subsequently leased the mineral estate to Coastal States Gas Producing Company, now Coastal Oil and Gas Corporation. Mineral rights in Share 15 currently belong to the Coates Energy Trust and Republic Royalty Company.

The above-discussed deeds, royalty contract, and leases, from the 1920 conveyance to Alex Champion to the lease with Coastal Oil, do not mention persons other than those stated in this discussion. Only the Coastal Oil lease excepts a portion of Share 15; that being the "portion of Share 15 lying within said Porcion 73." The disputed tract lies entirely within Porciones 74 and 75.

According to an unsigned 1947 affidavit[7] from Eleuterio Salinas and an April 1970 affidavit from Miguel Salinas and Santiago Salinas, Eleuterio rented the surface of Share 15 for grazing purposes. The unwritten lease extended from 1920 to 1928 and from 1930 to 1937. In 1929, Champion leased the surface to Niceforo Reyna for one year, also for grazing. Eleuterio's lease apparently ended when Juan Jose Champion and Amelia L. de Champion conveyed Share 15 to Vessels. Eleuterio concludes his affidavit by stating that he knows of no one who is adversely claiming any interest in Share 15.

### b. *The Garzas' Chain of Title*

In 1924, Schunior conveyed approximately 910 acres out of Share 13 by recorded deed to the Salinas family,[8] the Garzas' predecessors-in-interest. Approximately 356 acres belonging to E.M. Beebe were excluded from the conveyance. The deed conveys "all that certain tract[,] piece or parcel of land situated in Hidalgo County, Texas, and more particularlily [sic] described as Share numbered thirteen (13) of the Schunior Subdivision of Porciones 73, 74, & 75, which was surveyed and set aside for the Heirs of Salinas of

Jaras Chinas[.]" The deed further states that the land conveyed is the same land deeded to Schunior by the Salinas family in 1920. In 1933, the Salinas family entered into an oil, gas, and mineral lease with Homer P. Lee for approximately 730 acres out of Share 13. This lease does not include the minerals in any acreage the Salinas family might have claimed at the time in Share 15.

By two recorded 1938 deeds, subsequently revised and recorded in 1942, Eleuterio Salinas, Tomas Salinas, and Amelia G. Salinas conveyed 271 acres to Guadalupe Garza[9] from their undivided portions of Share 13. The 1942 deed references the subdivision plat map, describes the property by metes and bounds, and states that the 271 acres are in the northeast part of Share 13. Every location reference states that the land is in Share 13. The deed warrants that if when Share 13 is partitioned, 271 acres cannot be secured in the northeast corner, Garza will nevertheless have 271 acres out of Share 13. The deed makes no conveyance from Share 15, nor does it mention fences within the metes and bounds description.

The Garzas contend an unrecorded survey map made in 1942 by E.M. Card to resolve litigation between the Salinas family and Guadalupe Garza[10] reflects that the disputed tract of land is in Share 13, rather than in Share 15. The map states it shows the true and correct fences and enclosures of Guadalupe Garza. While the south and west lines of Share 13 are indicated on the map, the north and east lines are not. The only surveyor's distances on the map are those for the boundaries of Garza's property. Proportionally, the boundary lines for Share 13 and 15 appear to be identical to those reflected on the recorded August 1920 map.

Beginning in 1969, the various owners of Share 13 entered into mineral leases with Coastal Oil and these leases were renewed every five years. Production commenced

---

6. Cavazos, the current surface owner of Share 15, is not a party to this suit.

7. Both sides rely on this affidavit although it is unsigned.

8. Share 13 was conveyed to Manuela Salinas, widow of Tomas Salinas, Eleuterio Salinas, Eme-

terio Salinas, Andrea G. Salinas, widow of Jorge Salinas, and Brijida S. Bazan.

9. Also known as Guadalupe Garza Zamora.

10. Coates and Vessels were not parties to this litigation.

and in 1979, Coastal Oil filed an interpleader action[11] against Guadalupe Garza, his wife Amparo Garza, and others to establish mineral rights in 748.2 acres out of Share 13. In March 1982, the defendants in that cause agreed upon a mineral deed which clarified and confirmed the mineral interests of various parties in 938.4 acres out of Shares 13 and 15.[12] Guadalupe and Amparo signed the deed, which is part of the agreed judgment rendered in the *Ladouceur* case. By this deed, Guadalupe and Amparo received the mineral interests in approximately 255 acres out of Share 13 as well as the mineral interests, if any, of the other parties to the deed in 108.53 acres out of Share 15, *i.e.*, the acreage at issue. A map accompanying the deed, and also part of the judgment, indicates that the disputed tract is in Share 15.

Also in 1979, Guadalupe Garza and his wife, Amparo Garza, conveyed their interests, if any, in Shares 13 and 15 to their children.[13] The conveyance includes 345.394 acres, more or less, from Shares 13 and 15 and is described by metes and bounds. Guadalupe and Amparo retained the mineral rights to all property conveyed.

In December 1986, the trustees of the Guadalupe Garza and Amparo S. Garza Trust, created in 1982, and Amparo S. Garza[14] conveyed to the trustees[15] of the Garza Energy Trust, created in 1985, certain mineral interests as specified by an exhibit attached to the deed. Included in the interests conveyed were the "minerals owned by the Grantor in 108.5 acres of and, more or less, out of a tract of land of 190.2 acres out of Share 15 of the revised map of Schunior Subdivision of Porciones 73, A–71, 74, A–582 and 75, A–61, Hidalgo County, Texas[.]" The metes and bounds description for this interest is

> BEGINNING at a point, said point being the Southeast corner of Share 15, same being the Northeast corner Share 13;

THENCE, with and along the South line of Share 15, North 80° 45′ West a distance of 3799.0 feet;

THENCE North 0° 13′ East a distance of 1244.6 feet to a point in the North line of the 190.2 acres out of Share 15;

THENCE with and along the North line of the 190.2 acres out of share 15 and parallel to the South line of Share 15 South 80° 45′ East a distance of 2408.0 feet;

THENCE continuing with the North line of the 190.2 acres out of Share 15, South 80° 42′ East a distance of 1392.0 feet to a point in the East line of Share 15;

THENCE, with and along the East line of Share 15, South 9° 15′ West a distance of 1243.5 feet to the POINT OF BEGINNING, said tract containing 108.5 acres, more or less.

It is undisputed that no attempts have been made to produce the minerals from this tract of land.

## 2. The Disputed Tract

The disputed tract is part of approximately 190 acres that lie between the most southern boundary line of Share 15, as indicated on the 1920 plat map, and a fence that runs across a portion of Share 15 north of that boundary line, which adjoins fences on the easternmost west boundary line and the east boundary line of Share 15. The disputed tract is described in the Garzas' petition and in the trial court's judgment as:

> 107.5343 acres of land more or less out of and forming a part or portion of Share No. 15 of the Schunior Subdivision in Porciones Nos[.] 74 and 75, Reynosa Jurisdiction in Hidalgo County, Texas:
>
> BEGINNING at an iron pipe under fence set on the dividing line between Porciones Nos. 75 and 76, Reynosa Jurisdiction, the S.E. corner of Share No. 15 and N.E. corner of Share No. 13 of the Schunior

11. *Coastal Oil & Gas Corp., et al. v. Maria Ladouceur, et al.*, cause no. C–871–79–C in the 139th District Court of Hidalgo County, Texas.

12. The Coates were not parties to this deed.

13. The Garzas, with the exception of Amparo S. Garza, are the children mentioned in this deed.

14. Guadalupe Garza was deceased at the time of this conveyance.

15. The trustees of both trusts are appellants, Juan Lino Garza, Romulo Garza, and Guadalupe Garza, Jr.

Subdivision of Porciones Nos. 73, 74, and 75, Reynosa Jurisdiction in Hidalgo County, Texas, for the S.E. corner hereof;

THENCE with the dividing line between Share Nos. 13 and 15, N. 80 deg. 41'17" W., 3798.36 feet to an iron pipe under fence, for S.W. corner hereof;

THENCE following fence N. 09 deg. 19'12" E., 1231.82 feet to an iron pipe under fence, for N.W. corner hereof;

THENCE following fence across said Share ·No. 15, S. 80 deg. 45' 00" E.[,] 2314.32 feet to a point, for bend in line;

THENCE following fence S. 78 deg. 55' 50" E., 70.57 feet to a point, for bend in line;

THENCE following fence S. 81 deg. 52' 04" E., 74.65 feet to a point, for bend in line;

THENCE following fence S. 80 deg. 40' 29" E., 1338.71 feet to an iron pipe at corner of fence set on the dividing line between Porciones Nos. 75 and 76, Reynosa Jurisdiction, for N.E. corner hereof;

THENCE following fence with the dividing line between Porciones Nos. 75 and 76, Reynosa Jurisdiction, same being the East Boundary line of Share No[.] 15, S. 09 deg. 18' 44"., 1233.39 feet the place of BEGINNING and containing within these metes and bounds 107.5343 acres of land, more or less.

With slight variations which account for the reduced acreage, this description conforms with the 1986 conveyance to the Garza Energy Trust.

Exactly when and by whom the fence near the south boundary line of Share 15 was erected is not clear. An affidavit completed by Tom Vessels, Jr. in connection with the 1937 oil and gas lease to Sun Oil Co. indicates that Share 15 was totally fenced by 1920. An October 1950 affidavit by Vessels states that he rebuilt all the fences on the boundaries and repaired the remainder in 1937 and 1938. The 1947 affidavit of Eleuterio Salinas and the April 1970 affidavit of Miguel Salinas and Santiago Salinas state that the south fence was first built in 1929 by Niceforo Reyna, and then removed by Eleuterio when he again leased Share 15 in 1930.

The fence was replaced by Tomas Salinas at the instructions of Tom Vessels, Jr. after he acquired Share 15 in 1937. An October 1970 affidavit, also signed by Santiago and Miguel, contradicts the April affidavit. The second affidavit states that in 1924 the Salinas family constructed fences along the north boundary line of their property separating their lands from Share 15, which at that time was owned by Alex Champion.

> Tomas Salinas constructed a fence beginning at the northwest corner of the Salinas land and the Southeast corner of the Champions [sic] land going in a westerly direction and Eleuterio Salinas constructed a fences [sic] beginning at the Northwest corner of the Salinas land and the Southwest corner of the Champion lands going in a[n] easterly direction. At the time these fences were built there was a part of the land not fenced leaving a gap between the fences constructed by Tomas and Eleuterio Salinas.

This affidavit further explains that the gap was closed by Reyna in 1929, reopened by Eleuterio in 1930, and finally closed by Vessels in 1937.

In their petition, the Garzas assert the disputed tract was conveyed by the Salinas family to Schunior and that Schunior conveyed this tract to Champion in error, thus justifying their prayer for reformation of the 1920 deed to Champion. They also allege the fence at issue has always been considered by all to be the boundary line between Shares 13 and 15 and further claim that Champion, Vessels, and the Coates have acquiesced the fence is the boundary line. In the alternative, the Garzas allege the Salinas family began possession of the disputed acreage, adverse to Champion, when they built the fence at issue, and that the 1938 conveyance to Guadalupe Garza included the disputed acreage. Appellees do not dispute the Garzas' title to the surface of the 108 acres, and the present surface owners of Share 15 are not party to this cause of action.

Believing Coastal was draining their minerals from beneath the disputed tract by the placement of two wells just north of the fence at issue, the Garzas commenced this cause of action in 1988. In 1996, the trial court grant-

ed partial summary judgment in favor of appellees as to title questions only. Title to the mineral interests in the disputed tract was thereby quieted in the Coates Energy Trust and in Republic Royalty Company. The Garzas' remaining claims were severed into a new cause of action and abated pending the finality of the title question. The judgment does not state on what grounds summary judgment was granted.

### 3. STANDARD OF REVIEW

■ When a defendant moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied). The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden to: (1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or (2) establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.*

### 4. APPLICATION

To establish the right to the mineral interests in the disputed tract, the parties could show: (1) an unbroken chain of title, (2) a superior title derived from a common source, (3) prior possession without abandonment, (4) title by adverse possession, (5) recognition and acquiescence, or (6) presumptive grant. *See Land v.. Turner*, 377 S.W.2d 181, 183 (Tex.1964); *Karell v. West*, 616 S.W.2d 692,

695 (Tex.Civ.App.—Fort Worth 1981), *writ ref'd n.r.e. per curiam*, 628 S.W.2d 48 (Tex. 1982); *Mitchell v. Mesa Petroleum Co.*, 594 S.W.2d 507, 509 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). The Garzas' Third Amended Petition alleges, to some extent, title in them by each of these methods, with the exception of prior possession. Appellees moved for summary judgment, asserting the Garzas could not prove the elements of any of these methods and that appellees have superior title out of a common source.

#### a. *Chain of Title/Superior Title*

■ The parties claim Schunior as the common source of title as a result of the conveyances of Share 15 in 1920 and Share 13 in 1924. The parties do not claim the deeds from these conveyances are ambiguous and, indeed, they are not.

The Garzas, however, contend the deed to the Salinas family for Share 13 included the disputed tract. They rely on language within the deed that Schunior conveyed back all real property deeded to him by the Salinases and on their unsupported assertion that the Salinases cultivated and occupied the disputed tract from at least 1887.

■ A contract that can be given a definite or certain legal meaning is not ambiguous. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 74 (Tex.1997); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The construction of an unambiguous deed is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991); *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by the four corners rule. *Luckel*, 819 S.W.2d at 461; *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904, 906 (1957). Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Luckel*, 819 S.W.2d at 462; *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 167 (1953).

As stated previously, the 1920 deed to Champion conveyed approximately 1840 acres "more particularly described as Share 15 of a subdivision of lands ... known as the 'Schunior Subdivision', according to map or plat of said subdivision of record[.]" No exception was made for the disputed tract. The plat map specified that Share 13 was comprised of approximately 1266 acres. The 1924 deed to the Salinas family conveyed 910 acres out of Share 13, as delineated by the plat map, and excepted from the conveyance approximately 356 acres belonging to E.M. Beebe. Nothing in the deed can be construed to convey the disputed tract to the Salinases.

Language within the Salinas deed that Schunior reconveyed the same land deeded to him, should not be construed to broaden the conveyance specifically described in the deed. Although this same language references a deed of July 1920, that deed was not made a part of this record and was not presented to the trial court. Thus, no fact issue was raised regarding a mistaken reconveyance by Schunior to the Salinas family. Accordingly, the trial court could have properly construed the language to mean that the acres conveyed by the Salinas family in 1920 were the 910 acres out of Share 13 they received in 1924.

As to the disputed tract, the parties to the 1982 mineral deed agreed the acreage was in Share 15. The Garzas' predecessors-in-interest were part of this agreement. In addition, the 1986 conveyance to the Garza Energy Trust, of which the Garzas are trustees and/or beneficiaries, places the disputed tract within Share 15. Without an additional deed from the Coates or their predecessors-in-interest, conveying the mineral interest in the disputed tract to anyone in the Garzas' chain of title, the Garzas cannot establish superior record title to the minerals under Share 15. After reviewing the record, we find no such deed. Because the Garzas did not raise a material issue of fact regarding their chain of title and superior title from a common source, their eighth point of error is overruled.

b. *Title by Adverse Possession*

■ The Garzas claim title to the mineral rights in the disputed tract through the alleged adverse possession of their predecessors-in-interest. They specifically contend their adverse possession began in 1924 when Eleuterio Salinas built a fence separating the disputed tract from the remainder of Share 15 and began to cultivate or use the land for grazing purposes exclusive to the rights of all others. They assert title under the three, five, ten, and twenty-five year limitations periods.

■ Adverse possession as defined in section 16.021 of the civil practice and remedies code is "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 1986); *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990); *Clements v. Corbin*, 891 S.W.2d 276, 278 (Tex.App.—Corpus Christi 1994, writ denied). To establish title through adverse possession, "the possession must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Clements*, 891 S.W.2d at 278 (quoting *Rick v.. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948)).

The applicable statutes state, in relevant part, as follows:

**§ 16.024. Adverse Possession: Three–Year Limitations Period**

A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues.

**§ 16.025. Adverse Possession: Five–Year Limitations Period**

(a) A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:

(1) cultivates, uses, or enjoys the property;

(2) pays applicable taxes on the property; and

(3) claims the property under a duly registered deed.

**§ 16.026. Adverse Possession: 10–Year Limitations Period**

(a) A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

**§ 16.028. Adverse Possession With Recorded Instrument: 25–Year Limitations Period**

(a) a person, regardless of whether the person is or has been under a legal disability, may not maintain an action for the recovery of real property held for 25 years before the commencement of the action in peaceable and adverse possession by another who holds the property in good faith and under a deed or other instrument purporting to convey the property that is recorded in the deed records of the county where any part of the real property is located.

TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024, 16.025(a), 16.026(a), 16.028(a) (Vernon 1986). The Garzas' Third Amended Original Petition also lists section 16.029 as a basis for establishing title. However, that section merely provides what can be considered *prima facie* evidence of title.

The record reflects that the Salinas family built the fences along the boundary between Shares 13 and 15, including a partial fence between Share 15 and the disputed tract. The family leased Share 15 for grazing from 1920 to 1928 and from 1930 to 1937. Their cattle moved freely between their property and the leased property through the opening in the fence.

In 1937, Share 15 was conveyed to Vessels who almost immediately severed the minerals from the surface by the oil and gas lease to Sun Oil Co. The disputed tract was not excluded from the conveyance. By deeds in 1938 and corrected in 1942, certain members of the Salinas family conveyed a portion of Share 13 to the Garzas' immediate predecessor-in-interest, Guadalupe Garza. In 1939, the Salinas family quitclaimed to Vessels their interests in all of Share 15, as delineat-

ed on the recorded map of August 1920. As these deeds can be given a definite or certain legal meaning, they are not ambiguous.

Unless the Salinas family transferred their adverse claims, if any, in Share 15 prior to the 1939 quitclaim deed, all their interests in the disputed tract passed to Vessels. *See Rogers v. Ricane Enter., Inc.,* 884 S.W.2d 763, 769 (Tex.1994) (quitclaim deed passes the interest of the grantor in the property). Because the lease to Sun Oil Co. included a warranty of title, any mineral interest subsequently acquired to that land passed *eo instante* to Sun Oil Co., with a reverter in Vessels should the lease fail. *See Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 770 (Tex.1983); *Caswell v. Llano Oil Co.,* 120 Tex. 139, 36 S.W.2d 208, 211 (1931); *Shield v. Donald,* 253 S.W.2d 710, 712 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n.r.e. ) (regarding mineral interest).

The 1942 deed, which corrected the 1938 deeds, provides that Guadalupe Garza was conveyed land described as:

271 acres out of the Northeast part of Share No. Thirteen (13) out of Schunior[']s Subdivision of Porciones 73, 74, and 75 in Hidalgo County, Texas, according to the plat of said subdivision of record in the office of the County Clerk of Hidalgo County, Texas[.]

In four places, the deed states that the acreage is out of Share 13. One of those statements is an unconditional warrant of 271 acres in Share 13, and another provides that if the acreage is unavailable at the location described, Garza will have 271 acres out of Share 13. As discussed above, the metes and bounds description does not refer to the fence which existed at the time of the conveyance and makes no mention of Share 15.

■ The record does not reflect that the Salinas family transferred their interests in the disputed tract to the Garzas prior to the 1939 quitclaim deed to Vessels. Therefore, no material issue of fact exists regarding title by adverse possession prior to 1939 under the three, five, ten, or twenty-five year statutes. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024, 16.025, 16.026 16.028. Because of the 1937 severance, to raise a fact issue

regarding adverse possession of the minerals under the disputed tract after 1939, there must be some evidence of drilling. *See Sun Operating Ltd. Partnership v. Oatman,* 911 S.W.2d 749, 757 (Tex.App.—San Antonio 1995, writ denied); *Webb v. British Am. Oil Prod. Co.,* 281 S.W.2d 726, 734 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e .). As stated previously, no drilling has commenced.

We hold the trial court did not err in granting summary judgment against the Garzas' claims of adverse possession. The Garzas' first, second, third, fourth, fifth, and sixteenth points of error are overruled.

### c. *Recognition and Acquiescence*

In order for the doctrine of recognition and acquiescence to apply, adjoining landowners must be uncertain about the location of the boundaries. *Wall v. Carrell,* 894 S.W.2d 788, 798 (Tex.App.—Tyler 1994, writ denied); *Boothe v. Fuentes,* 262 S.W.2d 754, 755 (Tex.Civ.App.—San Antonio 1953, no writ). When there is no doubt as to the true location of the boundary line, mere proof of acquiescence in an erroneous line will not support a verdict. *Wall,* 894 S.W.2d at 798.

In the case before us, no material issue of fact exists regarding the certainty of the boundary line. The deeds from Schunior in 1920 and 1924 describe the boundaries of Shares 13 and 15 as being those delineated on the 1920 plat map. The 1982 mineral deed, which was signed by the Garzas' immediate predecessors-in-interest, and the 1986 conveyance to the Garza Energy Trust describe the disputed tract as being in Share 15, thus confirming the boundaries as shown on the 1920 map. The Garzas' sixth point of error is overruled.

### d. *Presumptive Grant*

In order to establish a presumptive grant, there must be a long and notorious claim of ownership, nonclaim by the ostensible owner, and acquiescence on the part of the ostensible owner in the claim of the adverse party. *Love v. Eastham,* 137 Tex. 462, 154 S.W.2d 623, 625 (1941); *see Purnell v. Gulihur,* 339 S.W.2d 86, 88 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). When these elements are satisfied, a court will pre-

sume title passed by a deed from a previous party in the chain of title, which cannot be produced. *Eastham,* 154 S.W.2d at 625.

The Garzas argue that their long and notorious claim of ownership began in 1887 when the Salinas family possessed the disputed tract. This ownership, if any, ended with conveyance of all interests in the Porciones to Schunior in 1920. As stated previously, the record does not raise a fact issue about what the Salinas family conveyed to Schunior. The 1924 deed back from Schunior clearly states that he was conveying everything he received in 1920. Nothing contradicts that statement. Moreover, even if the Salinas family could establish title in the disputed tract by presumptive grant, that title was not conveyed to the Garzas' immediate predecessors-in-interest by the 1938 deed. The Garzas' seventh point of error is overruled.

### 5. REFORMATION OF 1920 AND 1939 DEEDS

The Garzas contend the 1920 deed from Schunior to Champion should be reformed to exclude the disputed tract from Share 15. They also argue that the 1939 quitclaim deed from the Salinas family to Vessels should be reformed in the same manner. Appellees assert such relief is barred by the statute of limitations and that the Garzas should have known of title defects by 1982 at the latest. We agree.

Assuming the four-year limitations period for bringing an action to reform a deed, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *Lathem v. Richey,* 772 S.W.2d 249, 253 (Tex.App.—Dallas 1989, writ denied), was tolled by the discovery rule, the Garzas should have known by 1982 of defects in either of the deeds at issue. At that point it became clear the parties in the *Ladouceur* case, including appellant Amparo Garza, considered the disputed tract to be a part of Share 15. In addition, a 1979 mineral lease between the Garzas' immediate predecessors-in-interest and Coastal was amended in 1982 to include language acknowledging the need to perfect title to any property they owned in Share 15. As this cause of action, was not brought until 1988, the Garzas, to avoid summary judg-

ment, had to raise a fact issue that discovery of the title defects was not possible until 1984 or later. After reviewing the record, we find the evidence presented to the trial court raises no such fact issue. Moreover, as stated previously, nothing in the record raises a material issue of fact regarding a discrepancy in the acreage conveyed to Schunior by the Salinases and the subsequent reconveyance by Schunior to the Salinases. Accordingly, we overrule the Garzas' ninth, tenth, and eleventh points of error.

### 6. CONCLUSION

We hold the trial court did not err in granting summary judgment in favor of appellees on the Garzas' title claims. We overrule the Garzas' seventeenth point of error. Due to our disposition, it is not necessary to address the Garzas' twelfth, thirteenth, fourteenth, and fifteenth points of error. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's order granting appellees' motions for summary judgment on the Garzas' title claims.