George A. Sarandos, et al. v. Laura Lee Blanton










 







IN THE
TENTH COURT OF APPEALS
 

No. 10-98-364-CV

     GEORGE A. SARANDOS
     AND ATHENA SARANDOS,
                                                                         Appellants
     v.

     LAURA LEE BLANTON,
                                                                         Appellee
 

From the 77th District Court
Freestone County, Texas
Trial Court # 96-235-A
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
   
      Laura Lee Blanton filed suit against George A. Sarandos and his wife Athena to quiet title
to minerals located in and under a 60.652-acre tract of land. Laura claims title by virtue of a
1987 mineral deed from her father. George and Athena claim ownership of the minerals by
adverse possession under a vacancy awarded George and his brother Ernest in 1977 by the
Commissioner of the General Land Office (the “Commissioner”). The facts are not disputed,
and the parties filed competing summary judgment motions. After hearing, the court granted
Laura’s motion and decreed that she owns the minerals in question.
      George and Athena claim under a single point of error that the court erred in granting
Laura’s motion for summary judgment and denying their own because: (1) their possession of
the surface under a vacancy award granting surface and mineral estates constitutes adverse
possession of the minerals as a matter of law; and (2) drilling and production of previously
severed minerals was unnecessary to establish adverse possession when the competing claimant
to the minerals had notice of their adverse claim and acquiesced to that claim for more than ten
years.
BACKGROUND
      Laura’s father E. C. Scurlock conveyed what was believed to be a 739.1-acre tract of land
(the “Scurlock tract”) located on the border of Leon and Freestone Counties to Lon Morris
College in 1963, reserving all mineral interests to himself. Lon Morris College sold the
property to Tommy Lynn Turner in 1964. Turner sold the property in 1967 to George and
Ernest Sarandos. Since that time, the Sarandoses have made improvements, hunted, grazed
cattle, and paid taxes on the property.
      In 1975, George and Ernest made application with the General Land Office (the “GLO”)
as good faith claimants to purchase a suspected vacancy located within this property.


 See Act
of May 9, 1939, 46th Leg., R.S., ch. 3, § 1(f), 1939 Tex. Gen. Laws 465, 470-71, repealed
by Act of May 24, 1977, 65th Leg., R.S., ch. 871, § 16, 1977 Tex. Gen. Laws 2345, 2697. 
The County Surveyor of Leon County surveyed the land and determined that a 178.02-acre
vacancy existed within the Scurlock tract. The surveyor also concluded that the Scurlock tract
actually contained 802.15 acres, rather than the 739.1 acres previously believed. Based on this
survey (the “Sarandos survey”), the Commissioner determined that the vacancy existed, and
the School Land Board fixed its price at $62,307. Id.
      The State awarded the vacancy to George and Ernest in January 1977, reserving a one-sixteenth royalty interest in oil and gas and a one-eight royalty in all other minerals. In July,
George and Ernest partitioned their acreage (i.e., both the 178.02-acre vacancy and the 802.15
acres disclosed by the Sarandos survey). In this partition, Ernest’s conveyance to George
purported to include 76.48 acres out of the 178.02-acre vacancy, and George’s conveyance to
Ernest purported to include the southernmost 101.54 acres from the vacancy. The 60.652
acres presently in dispute all lie within George’s 76.48 acres.



      In 1978, Scurlock executed a mineral lease in favor of Kimball Production Company
conveying an interest in the minerals in the Scurlock tract, described as containing 739.1 acres,
consistent with the legal description in his 1963 deed to Lon Morris College. In 1980, George
and his wife Athena executed a mineral lease in favor of Seneca Resources Corporation on
their portion of the 178.02-acre vacancy tract. Ernest and his wife Sharon executed a similar
lease on the same date. Kimball notified Scurlock in 1981 that it wanted to reduce its delay
rentals because of the Sarandoses’ apparent ownership of the 178.02 acres acquired from the
State. Kimball supported this request with a 1980 title opinion describing the history of the
property and the Sarandoses’ claim. Kimball tendered an agreement reducing the delay rentals
to Scurlock for his signature. However, the record does not reflect whether Scurlock ever
signed this agreement.
      In 1987, Scurlock conveyed the mineral estate of the 739.1-acre tract to his daughter
Laura Blanton, expressly referencing the property descriptions contained in his 1963 deed to
Lon Morris College and the 1952 deeds by which he received the two tracts comprising this
acreage. Laura’s husband Jack sent a copy of the 1980 title opinion received from Kimball to
an independent landman for review acknowledging, “It may be that we have 624.13 acres in
this tract or it may be 802.1.” Eight days later, Laura executed a mineral lease in favor of
Wisenbaker Production Company on 544.13 out of 802.15


 acres, expressly excepting the
178.02-acre tract claimed by George and Ernest. George and Athena executed a mineral lease
in favor of Wisenbaker on their portion of the 178.02-acre tract two months later. Ernest and
his wife Sharon executed a similar lease on the same date.
      In 1994, George and Athena executed a mineral lease in favor of Jordan Oil & Gas
Company on their portion of the 178.02-acre tract. Ernest and Sharon executed a similar lease
on the same date covering the remainder of that tract. That same year, Laura executed a
mineral lease in favor of Sonat Exploration Company on the 544.13 acres she had previously
leased to Wisenbaker. In April 1995, Sonat notified Laura that she should be credited with an
additional 80 acres out of the 802.15-acre tract. Accordingly, Laura executed a “Correction of
Lease Description” amending her 1994 lease to cover 624.13 acres rather than 544.13.
      Ernest Sarandos conveyed a surface estate of 307.843 acres to Houston Lighting & Power
Company (HL & P) in 1995, including his 101.54 acres out of the 178.02-acre tract. Tyler
surveyor Bill H. Burton prepared a survey report for HL & P to review the accuracy of the
Sarandos survey. Burton concluded that the Sarandoses’ tract actually contains only 177.582
acres (not 178.02); that 60.652 of these acres lay within the original Scurlock tract and thus
within the mineral estate owned by Laura; and that there were “pure vacancies” totaling only
116.929 acres. One month later, the GLO notified George that the acreage in the vacancy
award was being reduced to 116.93 acres in accordance with Burton’s report and that the
purchase price was being reduced to reflect this decrease in acreage to the point that he owed
only $90.80 to pay it off.
      The GLO received a $90.80 payment in January 1996.


 Laura executed another corrective
lease description in favor of Sonat in April, increasing the acreage by adding the 60.652 acres
disclosed by Burton. In June, Sonat drilled an exploratory gas well which proved successful. 
The GLO issued a patent in the name of George and Ernest Sarandos in August for 116.93
acres. Five days later, Laura filed suit against the Sarandoses and others for a declaratory
judgment to quiet title to the minerals in and under the disputed 60.652 acres.
      In December, the GLO received a payment of $6,440.66 from the Sarandoses, which is
the amount that would still be owed had the GLO not reduced the acreage in the vacancy
award. Twelve days later, the GLO notified George that the $90.80 had been received in
January “making the file paid in full,” the patent had issued, and the $6,440.66 overpayment
was being refunded.
STANDARD OF REVIEW
      When the parties have filed competing motions for summary judgment and one is granted
while the other is denied, an appellate court may consider the propriety of the denial as well as
the granting. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); McCreight v.
City of Cleburne, 940 S.W.2d 285, 287-88 (Tex. App.—Waco 1997, writ denied). If the
pertinent facts are undisputed, the court can determine the issues presented as a matter of law. 
McCreight, 940 S.W.2d at 288. In this situation, the court will either affirm the judgment or
reverse and render. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988); Tobin v. Garcia, 159
Tex. 58, 64, 316 S.W.2d 396, 400-01 (1958).


 However, if resolution of the issues rests in
disputed facts, summary judgment is inappropriate, and the court will reverse and remand. See
Coker v. Coker, 650 S.W.2d 391, 394-95 (Tex. 1983); McCreight, 940 S.W.2d at 288.
ADVERSE POSSESSION OF SEVERED MINERALS
      George and Athena argue in their sole point that they have established title to the minerals
under the disputed acreage by adverse possession because: (1) their possession of the acreage
under a vacancy award which purported to convey both surface and mineral estates constitutes
adverse possession of both estates as a matter of law; and (2) Laura had actual notice of their
claim for more than ten years and acquiesced to it. Laura responds that because George and
Athena have never drilled or produced any minerals from the disputed acreage, they cannot
establish title to the previously-severed mineral estate by adverse possession. 
Applicable Law
      The statutory definition of the term “adverse possession” has remained essentially
unchanged for more than a century. Compare Tex. Civ. Prac. & Rem. Code Ann. §
16.021(1) (Vernon 1986) with Mhoon v. Cain, 77 Tex. 316, 318, 14 S.W. 24, 24 (1890)
(quoting article 3198 of 1879 Revised Civil Statutes). The current statute provides:
“Adverse possession” means an actual and visible appropriation of real property,
commenced and continued under a claim of right that is inconsistent with and is
hostile to the claim of another person.

Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1).


 
      To prevail on an adverse possession claim, the claimant must establish all the required
elements. See Rhodes v. Cahill, 802 S.W.2d 643, 645 (Tex. 1990); Amador v. Berrospe, 961
S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. denied). Thus, a party claiming
title by adverse possession must, at a minimum, prove the following:
      •    actual possession of the disputed property;
      •    under a claim of right;
      •    which is adverse or hostile to the claim of another.



See Haby v. Howard, 757 S.W.2d 34, 37 (Tex. App.—San Antonio 1988, writ denied);
Ramirez v. Wood, 577 S.W.2d 278, 287 (Tex. Civ. App.—Corpus Christi 1978, no writ); see
also Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1).
      Concerning the first element, settled case law in Texas establishes that, after the mineral
and surface estates have been severed, an adverse possessor of the surface estate cannot
accomplish adverse possession of the mineral estate unless he takes actual possession of
minerals under the surface by drilling and producing them for the statutorily-prescribed period. 
Thedford v. Union Oil Co., 3 S.W.3d 609, 615 (Tex. App.—Dallas 1999, pet. denied); Garza
v. Maddux, 988 S.W.2d 280, 289-90 (Tex. App.—Corpus Christi 1999, pet. denied) (op. on
reh’g); Sun Operating Ltd. Partnership v. Oatman, 911 S.W.2d 749, 757 (Tex. App.—San
Antonio 1995, writ denied); see also Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501, 504
(1923); Thomas K. McElroy, Adverse Possession of Mineral Estates, 11 Baylor L. Rev. 253,
258 (1959).
      In Orsborn v. Deep Rock Oil Corp., the Supreme Court addressed the second statutory
element, the “claim of right.” 153 Tex. 281, 290-91, 267 S.W.2d 781, 787 (1954). The
Court stated:
No matter how exclusive and hostile to the true owner the possession may be in
appearance, it cannot be adverse unless accompanied by the intent on the part of the
occupant to make it so. The naked possession unaccompanied with any claim of right
will never constitute a bar.

Id. at 291, 267 S.W.2d at 787 (quoting Houston Oil Co. v. Stepney, 187 S.W. 1078, 1084
(Tex. Civ. App.—Beaumont 1916, writ ref’d)); accord Boyle v. Burk, 749 S.W.2d 264, 266
(Tex. App.—Fort Worth 1988, writ denied).
Analysis
      George and Athena argue that the drilling and production requirement should not apply in
their case because they adversely possessed the disputed acreage under a vacancy award from
the sovereign which purported to convey both surface and mineral estates. We disagree.
      The Supreme Court addressed a remarkably similar fact situation in Atlantic Refining Co.
v. Noel. 443 S.W.2d 35 (Tex. 1969) (op. on reh’g). In that case, a survey was made of two
tracts of land in Upton County in 1881. The Commissioner patented the odd numbered
sections in these two blocks to the Missouri, Kansas and Texas Railroad Company. In 1904,
John R. Johnston applied for a patent to section 26 of block 1. The next year H. R. Smith
applied for a patent to section 10 of block 1. The Commissioner awarded these sections to
Johnston and Smith on the basis of the 1881 survey.
      Union Land Company came into possession of sections 10 and 26 through mesne
conveyances from the original awardees. At that time, these sections remained unpatented
because the full purchase price had not yet been paid to the State. In 1913, the Commissioner
ordered a resurvey of block 1 at Union Land’s request. The surveyor failed to utilize at least
twelve of the monuments set by the prior surveyor in 1881. The resurvey revealed that each of
the sections contained 670 acres rather than the 640 acres found by the original surveyor. In
addition, because the surveyor ignored several of the monuments set in 1881 and located new
ones to correspond to his resurvey, apparent vacancies were “discovered” along the northern
borders of sections 10 and 26.
      Union Land conveyed sections 10 and 26 to Cordova Union Oil Corporation in 1926. 
Cordova Union conveyed the minerals in and under sections 10 and 26 to Atlantic Refining
Company in 1943, thereby severing the surface and mineral estates in these tracts. Cordova
Union later conveyed the surface estates in the tracts to two other parties. The mortagee for
these surface owners paid off the debt owed to the State for sections 10 and 26 in 1946
whereupon the Commissioner issued patents in the names of the original awardees (Johnston
and Smith). The legal descriptions in these patents were based on the 1913 resurvey rather
than the original 1881 survey.
      W. D. Noel filed an application with the Commissioner in 1961 to lease the minerals in
the two vacancies apparently disclosed by the 1913 resurvey. The Commissioner determined
that the alleged vacancies existed, granted Noel’s application, and later issued patents to the
surface owners as good faith claimants. 
      It was subsequently determined that the 1913 survey was incorrect and the alleged
vacancies did not exist. Atlantic Refining filed a trespass to try title suit against Noel and the
surface owners. Noel and the owners responded that Atlantic Refining was estopped to deny
the existence of the vacancies. The Supreme Court rejected this argument stating:
The act relied upon for the creation of an estoppel against Atlantic Refining
Company as owner of the mineral estate is the act of the owners of the surface to
Sections 26 and 10. It is an act of the surface owners done long after the mineral and
surface estate had been severed and after Atlantic obtained its title to the minerals in
1943. To estop Atlantic under such circumstances would mean that the owner of a
mineral estate can be estopped by conduct of the surface owner over whom he has no
right of control. It would mean that a mineral owner may be estopped by the conduct
of the surface owner after the severance of the mineral and surface estates and about
which the mineral owner had neither constructive nor actual notice.

Atlantic Refining Co., 443 S.W.2d at 39-40. The Court also observed:
 
A rule which would permit the acts of a surface owner to reduce the ownership of
the mineral estate, even without notice or knowledge of the facts by the mineral
owner, is one which should be announced with some caution. It would mean that
Cordova Union, which owned both the minerals and surface prior to 1943 could first
convey the minerals, later accept a patent with reduced acreage, and estop its vendee
even though this would be in derogation of its own deed. Cordova Union could then
assert a good faith claim not only to the surface but to the mineral estate which it had
effectively defeated. Cordova Union could, sub silentio, empower its remote surface
vendees with the same power to accept a patent and reduce the mineral acreage.

Id. at 41.
      We believe these concerns apply with equal force to George and Athena’s argument that
the requirement of drilling and production for adverse possession of severed minerals should
not apply to them. To allow George and Athena to establish a limitations title to a previously-severed mineral estate without actually taking possession of the minerals would raise concerns
identical to those expressed by the Supreme Court in Atlantic Refining. See id. at 39-41. 
Accordingly, we conclude that George and Athena may not rely on the erroneous vacancy
award to establish a limitations title to previously-severed minerals which they never drilled or
produced. See Thedford, 3 S.W.3d at 615; Garza, 988 S.W.2d at 289-90; Sun Operating, 911
S.W.2d at 757; McElroy, supra, at 258.
      George and Athena also argue that they established a limitations title under the ten-year
statute because Laura and her father were aware of their claim to the minerals and acquiesced
to their claim for more than ten years. See Tex. Civ. Prac. & Rem. Code Ann. § 16.026
(Vernon Supp. 2000). Under this theory, they assert that actual possession of the disputed
minerals is unnecessary when the owner has actual notice of the adverse claim. They rely on
Orsborn v. Deep Rock Oil Corp. to support this argument.
      As previously noted, the Supreme Court in Orsborn addressed the second element required
to establish adverse possession, the “claim of right.” See Orsborn, 153 Tex. at 290-91, 267
S.W.2d at 787; Boyle, 749 S.W.2d at 266. By conveying an interest in the minerals in a 1980
mineral lease, the Sarandoses established that they exercised a “claim of right” to the disputed
minerals sufficient to satisfy the second element of their adverse possession claim. Their
summary judgment proof also establishes that Blanton acquiesced in their claim when she
executed the mineral lease in favor of Wisenbaker in August 1987, expressly excepting the
178.02-acre tract from the lease. Her acquiescence continued until April 1996 when she
amended her mineral lease with Sonat to include the 60.652 acres ultimately determined to lie
outside of the vacancy and within the original Scurlock tract.


 
      Even if George and Athena established the requisite “claim of right” however, Blanton’s
summary judgment proof establishes that they never acquired actual possession of the disputed
minerals by drilling and production. See Thedford, 3 S.W.3d at 615; Garza, 988 S.W.2d at
289-90; Sun Operating, 911 S.W.2d at 757; McElroy, supra, at 258. They argue that drilling
and production should be unnecessary in a case such as theirs. However, our research has
disclosed no cases supporting this contention. Therefore, because the undisputed evidence
establishes that George and Athena never took actual possession of the disputed minerals,
Blanton is entitled to judgment as a matter of law. See McCreight, 940 S.W.2d at 288.
CONCLUSION
      It is undisputed that George and Athena never drilled or produced any minerals from the
acreage in question. Thus, they never took actual possession of the previously-severed mineral
estate. For this reason, they failed to establish their entitlement to judgment as a matter of law
on their claim of title by adverse possession. See American Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997). Accordingly, we overrule their sole point of error and affirm
the judgment. See Jones, 745 S.W.2d at 900; Tobin, 159 Tex. at 64, 316 S.W.2d at 400-01.
 
                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis
      Justice Vance and
      Justice Gray
Affirmed
Opinion delivered and filed July 26, 2000
Publish