Affirmed and Memorandum Opinion filed December 4, 2003











Affirmed and Memorandum Opinion filed December 4,
2003.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00508-CV

 

 

LEROY FLETCHER AND NANCY FLETCHER, Appellants

 

V.

 

J. GARLAND WATSON, JR. AND LAURIE
WATSON, Appellees

 



 

On Appeal from the 85th District Court

Brazos County, Texas

Trial Court Cause No. 48,414

 



 

M
E M O R A N D U M   O P I N I O N

This
is an easement case.  Like most easement
cases, the facts do not fit into a neatly tied package ready for
understanding.  Like most easement cases,
the original actors are deceased, as are some of the succeeding actors, so that
circumstantial evidence carried the day at trial, not direct evidence.  Although the story started in 1929, problems
did not arise until 1998, when the current owners of a 64-acre tract of land
were left without access to their property. 








That
is why J. Garland and Laurie Watson, owners of the 64-acre tract of land,
brought this suit: to ensure access to the property they bought.  The trial court found that the Watsons were entitled to an easement by necessity and
easement by estoppel over property owned by Leroy and
Nancy Fletcher.  The Fletchers did not
like this outcome and appealed on four issues: (1) the evidence is legally and
factually insufficient to support an easement by necessity; (2) the evidence is
legally and factually insufficient to support an easement by estoppel; (3) any easement terminated as a matter of law by
adverse possession under the five-year statute of limitations; and (4) the
trial court erred in denying the Fletchers a trial amendment to assert a
defense of good faith purchaser.  Because
we conclude (1) that there is sufficient evidence to support an easement by
necessity, and (2) that the Fletchers waived their right to complain on appeal
about their affirmative defense because they failed to request findings on the
issue, we affirm.  Finding that the trial
court appropriately found an easement by necessity, we need not address whether
it also was correct in finding an easement by estoppel
or whether the trial court abused its discretion when it denied the Fletchers a
trial amendment.

FACTS

Three
tracts of real property are involved in this litigation: (1) an 18.45 acre
tract purchased by the Fletchers in 1981, upon which they built a residence;
(2) a 45-acre tract, lying to the north and west of the 18-acre tract,
purchased by the Fletchers in 1990; and (3) a 64-acre tract, lying to the north
and east of the Fletchers= 18-acre tract, purchased by the Watsons in 1997.  The
Fletchers complain because the trial court granted an easement to permit the Watsons access to their land through the 45-acre Fletcher
tract.  The Watsons
respond that access was originally provided to their land across the 18-acre
tract, but was later moved to the 45-acre Fletcher tract by agreement of the
prior owners of the properties; they claim there is no other direct access to
their property.  The Fletchers=
representation of the disputed properties is reproduced below.









            All three tracts were once
owned by Mary Sebesta.  In 1928, Mary died, and in her will, she
divided her property among her four sons, including Tom and John Sebesta.  Tom Sebesta was given property that included both the 18-acre
tract and the 45-acre Fletcher tract. 
John Sebesta was given property that included
the 64-acre Watson tract.  In 1929, Mary Sebesta=s Last Will and Testament was
probated and filed of record in Volume T, Page 183 of the Probate Records of
Brazos County, Texas.  Attached to the
will was a map depicting the partitioned tracts and providing for 15-foot Alanes@
to allow access from each tract to Sulphur Springs
Road, the then-existing road.  One of the
15-foot lanes ran on or near the eastern boundary of the current 18-acre
tract.  This lane provided access to Sulphur Springs Road from the 64-acre Watson tract, then
owned by Mary=s son, John.  At that time, the public roads today known as
Sebesta Road, Emerald Parkway, and Sandstone Drive
did not exist.

In
1937, Clyde Goen purchased the 64-acre Watson tract
from John Sebesta. 
The Goen family used the 15-foot lane on the
eastern edge of Tom Sebesta=s
property to access their land.  The
15-foot lane was maintained with fences on either side, but this upkeep became
too expensive.  Sometime after the
purchase, Clyde Goen and Tom Sebesta
agreed that they would not continue to maintain the fences, and, instead, the Goen family could use other property owned by Tom Sebesta to access their property.  This alternate route crossed what is now the
45-acre Fletcher tract.  Oliver Goen, Clyde Goen=s
son, testified that at the time of the agreement, there was no other access to
their property.  Although there was
evidence that the Goens had, in the past,
periodically accessed their property from the east, the route was used to drive
cattle through, and it was not accessible by vehicle.  This eastern route also required crossing
property owned by someone else.  The Goens continued to cross the 45-acre Fletcher tract even after
Tom Sebesta sold the property and before the
Fletchers purchased it.[1]









In
1981, the Fletchers purchased the 18-acre Fletcher tract, fenced it off and
built a house on the property.  The
Fletchers erected a gate at the entry of their property from Sandstone drive
and put a lock on it.  At the time the
Fletchers purchased the 18-acre tract, they also obtained from the seller a
right of first refusal on the adjoining 45-acre Fletcher tract.  The Fletchers exercised their option in 1990
and purchased the 45-acre Fletcher tract. 
In 1991, the Fletchers secured the fencing and locked the gate providing
access to the 45-acre Fletcher tract.  At
that time, the Goens stopped going through the
Fletcher tract to get to their 64-acre tract. 
However, when the Goens requested permission
to use the Fletcher=s driveway to get to their property,
the Fletchers always permitted it.

In
1997, the Watsons bought the 64-acre Watson tract
from the Goens. 
Then, the Fletchers refused to allow the Watsons
to cross their property to enter the 64-acre Watson tract.  In 1998, the Watsons
sought a declaratory judgment and injunctive relief to determine the existence
and location of an easement and to enjoin the Fletchers from prohibiting them
from using the easement.  

The
case was tried to the court, and, on February 19, 2002, the trial court signed
a final judgment awarding the Watsons an easement
across the Fletcher tract to the Watson tract. 
After a motion for new trial was filed, the trial court entered findings
of fact and conclusions of law on May 2, 2002. 
This appeal followed.

DISCUSSION

I.       The
Question of an Easement

In
their first two issues, the Fletchers argue that the trial court erred because the
evidence was legally and factually insufficient to support its finding of an
easement by necessity and an easement by estoppel.  Because we find the evidence was sufficient
to support the trial court=s finding of an easement by
necessity, we do not consider the Fletchers= challenge to the finding of an
easement by estoppel.








A.      Standards of Review

The
Watsons sued for a declaratory judgment determining
the existence and location of an easement on the Fletchers=
property; therefore, the burden of proof was on them to establish their right
to an easement.  See Wilson v. McGuffin, 749 S.W.2d 606, 609 (Tex. App.CCorpus Christi 1988, writ denied).

When,
as here, a case is tried to the court and findings of fact and conclusions of
law are entered, the findings are reviewable for
legal and factual sufficiency of the evidence by the same standards that are
applied in reviewing the jury=s answers in a jury trial.  See Ortiz v. Jones, 917 S.W.2d 770,
772 (Tex.1996); Zieben v. Platt, 786 S.W.2d 797,
799 (Tex. App.CHouston [14th Dist.] 1990, no writ).  When reviewing a legal insufficiency point,
we must consider the evidence in the light most favorable to the decision of
the trier of fact and disregard all evidence and
inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001).  If the record contains any evidence of probative force to
support the finding, the legal insufficiency challenge must be overruled.  ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997).

When
reviewing a factual insufficiency point, we must consider all of the evidence
that both supports, and is contrary to, the trial court=s
finding.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  The finding will be set aside only when the
supporting evidence is so weak that the result is clearly wrong or manifestly
unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1987). 

We
review conclusions of law de novo and uphold them if they can be sustained on
any legal theory supported by the evidence. 
Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 277 (Tex. App._Houston [14th Dist.] 1999, pet.
denied).  

B.      Easement by Necessity








In
their first issue, the Fletchers contend the evidence was legally and factually
insufficient to support a finding of easement by necessity.  Three elements must be proved for an easement
by necessity: (1) unity of ownership prior to separation; (2) access must be a
necessity and not a mere convenience; and (3) the necessity must exist at the
time of severance of the two estates. 
Koonce v. Brite
Estate, 663 S.W.2d 451, 452 (Tex.1984); Mack v. Landry, 22 S.W.3d
524, 528 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  If the owner of land has or can use another
way to get to his property, he does not qualify for an easement by
necessity.  Duff v. Matthews, 158 Tex. 333, 311 S.W.2d 637, 683 (1958).

The
parties stipulated at trial that the first requirementCunity
of ownership prior to separation of the tractsCwas satisfied.  However, the Fletchers contend that the
second and third requirements are not satisfied because there is no evidence or
insufficient evidence of a necessity for access over the Fletcher tract when
the tracts were separated.  The Fletchers
argue that there was no necessity for an easement across the 45-acre Fletcher
tract because, at the time the tracts were severed in 1929Cwhen
Mary Sebesta gave the 18-acre and 45-acre Fletcher
tracts to Tom Sebesta and the 64-acre Watson tract to
John SebestaCaccess was provided by the 15-foot
lane identified in Mary Sebesta=s
will; that lane went to Sulphur Springs Road, the
only public road near the properties. 
The Fletchers also argue that the Goens, the
prior owner of the 64-acre Watsons tract, had used
other routes to access their property. 
Thus, they argue, access to the 64-acre Watson tract through the 45-acre
Fletcher tract was merely a convenience, not a necessity, and no necessity
existed at the time the tracts were severed. 

In
response, the Watsons do not argue that access across
the 45-acre Fletcher tract was necessary in 1929; rather, they contend
that the 15-foot laneCwhich some evidence showed was on
the 18-acre Fletcher tractCevidences an easement by necessity
that was later moved by agreement between Tom Sebesta
and the Goens to the 45-acre Fletcher tract. 








Thus,
this first issue really has three parts to it: (1) At the time of the division
of the properties, was there a necessity for an easement to access the 64-acre
Watson tract?; (2) Was this easement moved by agreement of the owners?; and (3)
Was there a necessity for an easement across the 45-acre Fletcher tract to
reach the 64-acre Watson tract?  We will
discuss them each in turn.

1.       The evidence shows a necessity at the
time of division of the properties.

Both
parties agree that the operative time period for determining whether an
easement by necessity was created is 1929; this is when Mary Sebesta=s will dividing the tracts was
probated, giving part to Tom (including the 18-acre and 45-acre Fletcher
tracts) and part to John (including the 64-acre Watson tract).  We first consider if legally and factually
sufficient evidence supports the court=s finding of an easement by
necessity in 1929.








Some
of the evidence presented at trial shows that the 64-acre Watson tract was
land-locked.  Mary Sebesta=s
inclusion of the 15-foot lane leading from the John Sebesta
(now Watson) tract to Sulphur Springs Road, the
then-existing public road, is some evidence that, at the time of severance, access
via the 15-foot lane was a necessity.  See Rushin
v. Humphrey, 778
S.W.2d 95, 97 (Tex. App.CHouston [1st Dist.] 1989, writ denied) (holding that language
of conveyance in which grantor reserved right of ingress and egress was
evidence of necessity for way of access).  Moreover, the Fletchers appear to concede that
the 15-foot lane was necessary to provide access from the 64-acre Watson tract
to Sulphur Springs Road, arguing that, because the
15-foot lane provided access to Sulphur Springs Road,
there was no necessity for access through the 45-acre Fletcher tract.[2]  This is some evidence to support the court=s
finding of an easement by necessity in 1929. 

We
reach the same conclusion regarding factual sufficiency.  In fact, there appears to be no evidence
contrary to the court=s findings.  The Fletchers have not pointed to any
evidence of alternate access in 1929. 
The Fletchers claim only that some evidence exists that the 15-foot lane
was carved out of both properties, so that neither the 64-acre Watson tract nor
the Fletcher tracts needed an easement. 
Some evidence supports this claim, but it is not enough to overcome the
trial court=s finding.  Therefore, we find there is legally and
factually sufficient evidence that an easement by necessity was created in 1929
along the 15-foot lane.

2.       The original easement was moved by
agreement between the owners.

We
turn next to the Watson=s contention that the easement by
necessity created along the 15-foot lane was later moved by agreement between
Tom Sebesta and the Goens.  In support of this assertion, the Watsons rely upon the testimony of Oliver Goen that his father, Clyde Goen,
and Tom Sebesta agreed to use an alternate route
across the 45-acre tract rather than continue to maintain the fences along the
15-foot lane.  Although the Fletchers
objected to this testimony at trial, on appeal they do not challenge the trial
court=s
admission of the testimony.  Moreover,
the trial court=s findings of fact included the
following:








10.       Originally
fences were on both sides [of] the 15-foot lane connecting the John Sebesta property to the public road. 

11.       Oliver
Goen=s father and Tom Sebesta agreed
that it would be too expensive to keep the fences up on both sides of the
15-foot lane.

12.       Oliver
Goen and Tom Sebesta agreed
that the Goen=s could access the property by using another portion of .
. . Tom Goen=s property.

13.       The
Goens used the portion of Tom Sebesta=s property that is currently a 45-acre tract owned by
Fletcher.

19.       The Goens
relied on their agreement with Tom Sebesta and did
not maintain the 15-foot lane or insist on its use.

Oliver
Goen=s testimony supports these fact
findings.  The trial court, as the trier of fact, is the sole judge of the weight and
credibility of the witnesses= testimony.  See Mayes v. Stewart, 11 S.W.3d 440,
450B51
(Tex. App.CHouston [14th Dist.] 2000, pet.
denied); Knox v. Taylor, 992 S.W.2d 40, 50 (Tex. App.CHouston
[14th Dist.] 1999, no pet.).  We may not
substitute our own judgment for that of the trier of
fact, even if a different answer could be reached on the evidence.  Knox, 992 S.W.2d at 50; Mayes,
11 S.W.3d at 450.  Here, the  Fletchers produced no testimony or other
evidence contradictory to Goen=s
testimony regarding the agreement.[3]  Therefore, the evidence is sufficient to
support the trial court=s findings that an agreement to move
the easement by necessity was made between Sebesta
and the Goens. 








Once
the location of an easement by necessity is established, it may be changed with
the expressed or implied consent of both parties.  See Samuelson v. Alvarado, 847 S.W.2d
319, 323 (Tex. App.CEl Paso, 1993, no writ) (holding
that once established, an easement by necessity cannot be changed by either the
easement owner or the servient owner without the
consent of both parties); Meredith v. Eddy, 616 S.W.2d 235, 240 (Tex. Civ. App.CHouston [1st Dist.] 1981, no writ)
(same).  Here the predecessors in
interest to the Fletchers and the Watsons agreed to
move the necessary access provided by the 15-foot lane to a location across
what is now the 45-acre Fletcher tract. 
The Fletchers do not contend that this was an action they were not
entitled to take.  This is some evidence
to support the finding that the easement was moved.

3.       There was a necessity for an easement
across the 45-acre Fletcher tract to the 64-acre Watson tract.  

Finally,
we turn to the third questionCwhether there is an easement by
necessity across the 45-acre tract.  As
noted above, the Fletchers argue that, as time progressed, an easement across
the Fletcher tract was merely a convenience because the Goens
also could reach the property from the east. 
Because of this, they argue the evidence was legally and factually
insufficient to support the court=s findings of fact 20, 21 and 26:

20.       The
access to the Watson tract across the Fletcher property is the only access
provided to the Watson tract.

21.       There
is a necessity for the Watsons to have access over
the Fletcher property to a public road.

26.       Access to the Watson tract across the
Fletcher tract is a necessity and not merely a convenience.

Our
review of the record leads us to conclude that these findings are supported by legally
sufficient evidence.  First, Oliver Goen testified that, at the time of the agreement to move
the easement, there was no other access to their property.  Tom Goen testified
there was no public access to their property. 
And both Goens testified that when they wanted
to get to their property, they asked the Fletchers if they could cross their
property.  This is some evidence that the
64-acre Watson tract had no public access. 
Second, in a backhanded way, the Fletchers essentially acknowledge that
the 64-acre tract is landlocked.  Indeed,
the Fletchers argue in their second issue that Athe overwhelming evidence@
showed that the Watsons purchased the 64-acre Goens tract knowing that it was landlocked.  








Among
the evidence the Fletchers cite regarding the Watson=
knowledge of lack of access is the testimony that the Goens
told the Watsons that the Fletchers had a problem
with access to the 64-acre tract through the Fletcher property, and they also
point to a reference in the Watson-Goen earnest money
contract to the need to obtain access via the Aexisting 15-foot access easement
through the adjoining tract@ to allow access to the
property.  And, at the closing on the
Watson tract, the Watsons signed several documents
indicating there was a lack of access to their property: (1) the deed did not
warrant or guarantee access to the tract; (2) the title policy expressly
excluded coverage for legal access to the property; and (3) an indemnity
agreement provided that the Watsons agreed to indemnify
both their lender and the title company against any problems with access.  After the purchase, the Watsons
also signed under oath an application for the construction of a public road in
which it was asserted that A[t]he road is necessary because the Goen 64.1 acre tract of land . . . does not have any
dedicated means of access and is >land locked.=@ 
Garland Fletcher also testified at trial that there was no public access
to the property.  Moreover, there was
circumstantial evidence that the property may have sold for less money than it
would have with access.  This is
sufficient evidence to support the trial court=s findings.  

The
result is the same regarding factual sufficiency.  Although there was some evidence that the Goens reached their property by another route, it is not
truly contradictory to the court=s findings.  It was undisputed that the route from the
east required the Goens to travel across the property
of another before they could reach a public road, and the Goens
testified that, in the past, they had used this route periodically, but only to
drive cattle through; it was not accessible by vehicle.  Other testimony, from Leroy Fletcher and a
land surveyor, about an alternate route related generally to the existence in
the past of a Atrail@ or a Agap@ in a fence, and the surveyor had no
knowledge of anyone actually using it. 
This evidence is not sufficient to overcome the trial court=s
findings.








In
summary, examining the evidence presented at trial, there is more than legally
sufficient evidence to support the trial court=s findings of fact that the Watsons could not access their property and that they
needed an easement across the Fletcher tract. 
We cannot say the trial court=s judgment as to necessity is so weak
that the result is clearly wrong or manifestly unjust.[4]  This is true even though some evidence was
introduced that the Watsons very occasionally
accessed their property from the east. 
In short, we find the evidence legally and factually sufficient to
support the trial court=s finding of an easement by
necessity that was later moved by agreement of the parties.

Because
we have found the evidence was sufficient to support a finding of an easement
by necessity, we do not reach the Fletchers= second issue, that the evidence was
legally and factually insufficient to support the finding of an easement by estoppel. 
Accordingly, the Fletcher=s first two issues are overruled.

II.      Adverse
Possession under the Five-Year Statute of Limitations 

In
their third issue, the Fletchers assert that the trial court erred in failing
to find, as a matter of law, that any alleged easement terminated by adverse
possession under Texas Civil Practice and Remedies Code section 16.025.  Under this section, a person must bring suit Anot
later than five years after the day the cause of action accrues to recover real
property held in peaceable and adverse possession by another who: (1)
cultivates, uses, or enjoys the property; (2) pays applicable taxes on the
property; and (3) claims the property under a duly registered deed.@
See Tex. Civ. Prac. & Rem.
Code Ann. ' 16.025(a) (Vernon 2002). 








Under
the statute, a party is required to show Apeaceable and adverse possession@
of the property sought as well as the three listed elements.  See Sarandos v.
Blanton, 25 S.W.3d 811, 815 & n.7 (Tex. App.CWaco
2000, pet. denied) (stating that party claiming title by adverse possession
under the three‑year, five‑year, ten‑year, or twenty‑five‑year
limitations statutes must prove the elements of adverse possession as well as
the additional requirements of each statute). 
Adverse possession is statutorily defined as Aan
actual and visible appropriation of real property, commenced and continued
under a claim of right that is inconsistent with and is hostile to the claim of
another person.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 16.021(1) (Vernon 2002).  APeaceable possession@
is defined as Apossession of real property that is
continuous and is not interrupted by an adverse suit to recover the property.@  See id. ' 16.021(3). 

One
seeking to establish title to land by virtue of the statute of limitations has
the burden of establishing all of the required elements.  Rhodes v. Cahill,
802 S.W.2d 643, 645 (Tex.1990).  The
question of adverse possession normally is a question of fact, so only in rare
instances is a court justified in holding that adverse possession has been
established as a matter of law.  Id. at 646.  

Here,
the Fletchers assert that when they purchased the Fletcher tract in 1990, they
enclosed it with fencing and cut off the Goens=
access to the property.  While Oliver Goen did acknowledge that the Fletchers cut off his access
across the Fletcher tract, both he and his son, Tom Goen,
testified that the Fletchers always gave the Goens
permission to go across the Fletchers= 18-acre tract to get to their
property.  The Fletchers did not refuse
permission to cross their property until 1997, when the Watsons
purchased their property from the Goens.  Before this, the Fletchers did not tell the Goens they needed to find a different way to reach their
property or indicate in any other way that their property could not be
crossed.  








Because
the Fletchers permitted the Goens to cross with
permission whenever requested, we do not find the alleged possession to be
sufficiently hostile to notify the Goens that the
Fletchers were asserting a hostile claim to the easement across the Fletcher
tract.  See Mack, 22 S.W.3d
at 531B32
(holding that possession was not sufficiently hostile when party seeking to
establish prescriptive easement took no action to exclude other users of way
over easement); see also Samuelson, 847 S.W.2d at 322 (noting
that, assuming four-year statute of limitations applied to bar declaratory
judgment action seeking easement across defendant=s property, limitations first
accrued when plaintiff was first prevented from using way of easement).  Under these circumstances, the period of
adverse possession did not begin until 1997, when the Fletchers first prevented
the Watsons from crossing the Fletchers=
property to reach the Watson tract.  The Watsons filed their lawsuit in 1998; therefore, the
five-year limitations period does not, as a matter of law, bar the Watsons= suit.  

We
overrule the Fletchers= third issue.

III.     Trial
Amendment

In
their fourth issue, the Fletchers contend that the trial court erred in
refusing to permit a trial amendment to allow the Fletchers to assert the defense
that the Fletchers were good faith purchasers for value with no notice, or
knowledge of, the alleged easement across the Fletcher tract, and therefore
took the property free of any unrecorded easements. 

Even
if we assume that the trial court abused its discretion, any error was
harmless.  The Fletchers contend that
their alleged status as good faith purchasers defeats a claim of easement by estoppel.  We have
not upheld the trial court=s judgment on its finding of an
easement by estoppel; rather, we have upheld it as to
the easement by necessity and have not reviewed the other finding.  The Fletchers do not argue that status as a
good faith purchaser defeats a claim of easement by necessity, and the case law
they cite refers only to easements by estoppel being
defeated by a good faith purchaser. 
Moreover, logically, it makes sense that an easement by estoppel could be defeated by a purchaser in good faith
without notice, but that an estoppel by necessity
would not be defeated.  Consequently,
even assuming error, we find the error harmless because we have not relied on
that finding of the court to affirm the judgment.

We
overrule the Fletchers= fourth issue and affirm the trial
court=s
judgment. 








 

 

 

/s/        Wanda
McKee Fowler

Justice

 

Judgment rendered and Memorandum
Opinion filed December 4, 2003.

Panel consists of and Justice Fowler
and Senior Chief Justice Murphy.  Former
Chief Justice Brister not participating. [5]











[1]  It appears
that the tract had several owners between Tom Sebesta
and the Fletchers.





[2]  In connection with this issue, the Fletchers argue that
the evidence is legally and factually insufficient to support the trial court=s finding of fact 25 (which states that there was a
necessity to cross the Fletcher tract in order to access the Watson tract at
the time the tracts were severed), because there was no evidence that, at the
time of severance, access across the 45-acre Fletcher tract was necessary.  We disagree with the Fletchers= interpretation of this finding.  As demonstrated by some of the findings of
fact discussed above, the parcels of land referenced in the trial court=s findings are undefined and are referenced in various
ways.  We believe the reference to the AFletcher
tract@ means the 18-acre tract purchased by the Fletchers,
and not the 45-acre Fletcher tract.  The trial court found that A[t]he 15-foot lane which allowed access to the John Sebesta tract traveled through Tom Sebesta=s property.@  Although the
exact location of the 15-foot lane was disputed at trial, there was some
evidence, including Oliver Goen=s testimony, that the 15-foot lane was located on the
Fletchers=
18-acre tract.  Therefore, the trial
court could have determined that the 15-foot lane was located on that portion
of Tom Sebesta=s property that is now the 18-acre tract owned by the
Fletchers. 





[3]  Although the Fletchers do not challenge the legal and
factual sufficiency of these findings in connection with this issue, they do
challenge some of these findings, as well as certain others, in connection with
their equitable estoppel issue.  However, even there, they point to no
evidence to contradict Oliver Goen=s testimony regarding the agreement.  





[4]  In their reply
brief, the Fletchers assert that an easement by necessity is not an available
remedy if there is (1) an express easement, or (2) other existing access at the
time of the severance of the estates. 
Regarding the existence of an express easement, the Fletchers contend
that, because access was provided by the 15-foot lane depicted in Mary Sebesta=s will, there was no need for an easement by
necessity.  However, the Fletchers cite
no authority for this proposition. 
Moreover, they do not contend that Mary Sebesta=s will created an express easement; indeed, their position
throughout has been that Athere is no express, written grant of an easement to
allow the Watsons access to their 64-acre tract.@  As we have
stated, the depiction of the 15-foot lane in Mary Sebesta=s will is some evidence that the way was necessary for
access to and from the John Sebesta (now Watson)
tract at the time the tracts were severed. 
Regarding other access existing at the time of severance, there is no
evidence that the lane preexisted the severance of the tracts, and we have
addressed the evidence of an alternate route to the Watson tract from the
east.  Therefore, we dismiss the
Fletchers= contentions.





[5]  Senior Chief
Justice Paul Murphy, participating by assignment.