

# NUMBER 13-15-00344-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARCO A. DELGADO, ET AL.,                       **Appellants,**

**v.**

JUAN LINO GARZA SR., ET AL.,                     **Appellees.**

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Hinojosa
### Memorandum Opinion by Justice Benavides

This is a suit for breach of a warranty of title, breach of the covenant against

encumbrances, breach of implied covenants, and trespass to try title, all stemming from

a land transaction between an ancestor of the appellants, the Salinases,[1] and an ancestor of the appellees, the Garzas.[2]  After a bench trial, the court signed a judgment in favor of the Garzas on all causes of action.  By nine issues, which we have reorganized, the Salinases challenge (1) Juan Lino Garza Sr.'s standing to sue; (2) the validity of the judgment against deceased defendants Vicente Saenz, Hilaria Hernandez, and Olivia Salinas Perez; (3) the validity of the judgment against the defendant estates of Francisca Vasquez, Eduardo Saenz, and Librada Salinas and the defendant Eduardo Saenz Children's Rev. Trust; and (4) the trial court's denial of their plea to the jurisdiction for failure to sue all indispensable parties.  They also contend that (5) the trial court erred in denying their statute-of-limitations defense as to the co-trustees of the Juan Lino Garza Energy Trusts A-1 and A-2 (Trusts A-1 and A-2).  Finally, the Salinases challenge (6) the damages awarded in what they claim is "fundamentally a breach of warranty claim," (7) the reliability of the Garzas' expert testimony on damages, and (8–9) the finding of joint and several liability against the Salinases.  We affirm in part and reverse and render in part.

## I.    BACKGROUND

---

[1] Appellants, defendants below, include Marco A. Delgado, Miguel A. Salinas, Maria Rosa Salinas, Margarito Salinas, Meliton Lopez, Norberto Lopez, Hilaria Salinas, Brady Salinas, Maria Elva S. Delgado, Maria Matilde S. Guerrero, Luis Humberto Delgado, Aurelia S. Sendejo, Lydia Robbins, Olivia Salinas Perez, the Estate of Francisca Vasquez, the Estate of Eduardo Saenz, the Estate of Librada Salinas, and the Eduardo Saenz Children's Rev. Trust (the Salinases).

[2] Appellees, plaintiffs below, include Juan Lino Garza Sr.; Juan Lino Garza Jr., as trustee of the Juan Lino Garza Trust; Juan Lino Garza Jr. and Elma Irene Garza, as co-trustees of the Juan Lino Garza Energy Trusts A-1 and A-2 (the Garzas).

This case arises from a legal dispute that began in 1942 between Eleuterio Salinas and Guadalupe Garza Zamora. Because of a 1942 suit, Eleuterio conveyed 271 acres out of Share 13 of the Schunior Subdivision in Porciones Nos. 73, 74, and 75 in Hidalgo County, Texas, to Guadalupe. The 1942 Deed described the conveyance of the property in terms of metes and bounds and warrantied the conveyance.

In 1988, the Garzas sued the Madduxes[3] alleging, among other things, that they owned the mineral rights to 108 acres that were part of 271 acres in Share 13, acreage that they claim was conveyed by the 1942 Deed. *Garza v. Maddux*, 988 S.W.2d 280, 287–91 (Tex. App.—Corpus Christi 1999, writ denied) (op. on reh'g) (the *Maddux* Litigation). The Madduxes argued that the disputed 108 acres were in Share 15, not in Share 13, and thus the acreage was never Eleuterio's property to convey. *Id.* The trial court granted summary judgment in favor of the Madduxes on the Garzas' title question. *Id.* at 286–87. In 1999, we affirmed the decision of the trial court, agreeing that 108 acres out of the original 271 acres belonged to the Madduxes. *Id.* at 291.

On November 13, 2001, the Garzas filed the present suit against the Salinases, seeking damages for the loss of the 108 acres out of the 271 acres. The trial court dismissed the suit for want of prosecution in 2004 but granted the Garzas' petition for bill of review in 2010. In February 2014, the Garzas filed their fourth amended original

---

[3] The Madduxes included Elizabeth H. Coates Maddux, independent executrix of the estate of George H. Coates, deceased; Barry Coates Roberts and George L. Stieren, trustees of the Coates Energy Trust, being the successors to Elizabeth H. Coates Maddux; Arthur T. Stieren, Jr., and Betty Ann Stieren Kelso, as trustees of the Coates Energy Trust; Elizabeth H. Coates Maddux, Arthur T. Stieren, Jr., and Betty Ann Stieren Kelso, beneficiaries of the Coates Energy Trust; and Republic Royalty Company, successor to Newmont Oil Company and Sasi Minerals Company.

3

petition, asserting breach of warranty of title, breach of the covenant against encumbrances, breach of implied covenants, and trespass to try title claims based on an improper conveyance of 108 acres of Share 13. In October 2014, the trial court denied the Salinases' plea in abatement or, alternatively, motion to dismiss for misjoinder that claimed the Garzas needed to join additional, indispensable defendants.

The case proceeded to a bench trial in November 2014. On April 30, 2015, the trial court signed a judgment in favor of the Garzas and against the Salinases, jointly and severally, on all causes of action. It also declared that the Garzas had "an undivided surface and mineral ownership interest in 13.5 acres in Share 13" in addition to their "uncontested ownership interest in 163 acres located within Share 13." The judgment awarded actual damages of $3,062,129.43, attorney fees for trial and appeal, and interest. The Salinases requested findings of fact and conclusions of law, which the trial court entered on August 26, 2015.[4] No additional findings of fact or conclusions of law were requested. This appeal ensued.

---

[4] Findings of fact include the following, among others: (1) "[o]n November 12, 1999, the Texas Supreme Court denied the [Salinases'] application for writ of error, thus terminating the appeals process and confirming the [Garzas'] right of title to the 108 acres," (2) "[the Garzas] initiated the instant litigation on November 13, 2001"; (3) "[the Garzas] have a 1/8 interest in the 108 acres in Share 13 that were not properly conveyed"; (4) "[the Garzas] did not acquire knowledge of the fact that the Subject Property was not fully and properly conveyed to them and their predecessors-in-interest until appeals were exhausted in the *Maddux* Suit. There was no failure of title until the appeals process was completed"; and (5) "[the Salinases] and their predecessors-in-interest have used and occupied all of Share 13 and have entered into oil and gas leases with certain oil companies that have drained valuable minerals from Share 13."

Relevant conclusions of law include: (1) the "Deed's warranty of title was breached in that 108 acres of the Subject Property was in Share 15—rather than Share 13—of the Schunior Subdivision of Porciones 73, 74, and 75"; (2) the Salinases "breached the covenant against encumbrances" and "committed a breach of implied covenants" for the same reasons; (3) "[a]ll pertinent statute of limitations were tolled and began to run once appeals were exhausted in the Maddux Suit. That is when failure of title occurred and when the Supreme Court of Texas said title was cleared"; (4) "[a]ny Plaintiff first named through an amended petition filed after November 2003 represents the correction of a misnomer"; and (5)

4

## II.    STANDING TO SUE

By their first issue, the Salinases contend that Juan Lino Garza Sr. had no standing to sue as a successor in interest to the warranty of title.  They claim that there is no evidence in the record that Garza Sr. was the record owner of any interest in the mineral estate of the property in question and that the damages awarded relate only to the mineral estate.  In response, the Garzas acknowledge that Garza Sr. has no standing to sue as a record owner of the mineral interest at issue; instead, they claim that by the 1993 Litigation Participation Agreement (LPA) signed in the *Maddux* Litigation, the Garza family members assigned their claims for recovery of the 108 acres to Garza Sr. and, thus, he has standing to sue as an assignee in this case.[5]

### A.    Standard of Review

Standing is a question of law subject to de novo review.  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).  Standing "may be raised for the first time on appeal by the parties or by the court."  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  When we review the standing of a party for the first time on appeal, we "must construe the petition in favor of the party," understanding that it is the plaintiff's burden to allege facts affirmatively demonstrating the trial court's jurisdiction

---

the Garzas are entitled to recover from the Salinases, jointly and severally, certain damages, including among others, $3,062,129.43 in actual damages.

[5] We note that the Litigation Participation Agreement identifies Juan Lino Garza, not Juan Lino Garza Sr., as the recipient.  On appeal, the parties refer to the Litigation Participation Agreement recipient only as Juan Lino Garza Sr., and we will do likewise.

5

to hear the case. *Id.* And, if necessary, we must "review the entire record to determine if any evidence supports standing." *Id.*

## B. Discussion

### 1. The Petition

The Garzas' fourth amended original petition identifies Garza Sr., individually, as a plaintiff. The petition does not identify Garza Sr. as an assignee under the LPA, and it alleges no facts that affirmatively demonstrate the trial court's jurisdiction on the basis that Garza Sr. has standing to sue as an assignee. *See id.* at 445–46. Therefore, even construing the petition in favor of the Garzas, we find no support for their position that Garza Sr. has standing to sue as an assignee, such that the trial court has jurisdiction over him. *See id.*

### 2. The Record

The Garzas argue that the LPA and supporting trial testimony establish the assignment of their claims to Garza Sr. for recovery of the 108 acres. We disagree.

#### a. Applicable Law

Texas has long allowed the assignment of causes of action. *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 774 (Tex. App.—Dallas 2012, pet. dism'd) ("As a general rule, causes of action are freely assignable."). An assignment is interpreted as a contract between the assignor and assignee and may be shown by evidence of a party's intention to transfer the right at issue. *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.); *Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston

6

[14th Dist.] 1989, no writ) ("An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract."). However, the parties' interpretations of the contract are irrelevant if the meaning of the contract is plain from its face. *Affiliated Capital Corp. v. Sw., Inc.*, 862 S.W.2d 30, 33 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981).

### b. The Litigation Participation Agreement

The Garzas claim that the Garza family members assigned their claims for recovery of the 108 acres to Garza Sr. through the LPA. The Garza family members signed the LPA in 1993 during the *Maddux* Litigation. The terms of the LPA delegated control and decision-making authority to Garza Sr., as well as payment of the litigation costs, that were subject to reimbursement in the event of a recovery in the *Maddux* Litigation. The LPA also provided that Garza Sr. was entitled to "30% of any gross recovery" from the *Maddux* Litigation, out of which Garza Sr. would pay any contingent attorney's fees.

However, the Garzas argue that the effect of the LPA did not end with the *Maddux* Litigation. They assert that the "recovery" referenced in the LPA extends from the *Maddux* Litigation to the present suit. The Garzas reason that this "recovery" assignment provides standing for Garza Sr. to assert the right to recover 30% of any gross recovery in this suit.

Our review of the LPA reveals no assignment language; instead, the parties intended only to outline how the *Maddux* Litigation was to be managed by Garza Sr., how he was to pay expenses related to the *Maddux* Litigation, and how the parties were to recover proceeds, if any, from the *Maddux* Litigation. *See Commercial Structures &*

7

*Interiors, Inc.*, 192 S.W.3d at 833. We cannot conclude that it was the intent of the Garza family to assign their claims for recovery of the 108 acres to Garza Sr. *See id.* To the extent we could construe the LPA as an assignment of rights, it would only be an assignment or transfer of rights to proceeds in the *Maddux* Litigation. The LPA, which delegated to Garza Sr. all control and decision-making authority regarding the *Maddux* Litigation, is not enough to provide him standing as an assignee in the present suit.

### c. Trial Testimony

The Garzas also assert that they offered extensive trial testimony that established the assignment. They direct us to the testimony of Garza Jr., who testified that he understood "that Juan Lino Garza[] Sr., contracted with his brothers and sisters to get 30 percent of the proceeds that would be recovered of the 108 acres." Garza Jr. testified that "[i]n our interpretation, [the LPA] gives [Garza Sr.] 30 percent of the 108 acres."

Although evidence of a party's intention to transfer a right may assist us in interpreting a contract, *see id.*, Garza Jr.'s interpretation or understanding of the agreement is irrelevant because the LPA's meaning is plain from its face. *See Affiliated Capital Corp.*, 862 S.W.2d at 33; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("A contract is unambiguous if it can be given a definite or certain legal meaning."). We cannot conclude that this evidence established an assignment in this case.[6]

### d. Summary

---

[6] Furthermore, one of the Garzas' experts testified that as he understood the LPA, it "relates to another lawsuit."

From our de novo review of the appellate record, *see Mayhew*, 964 S.W.2d at 928, we conclude that through the LPA the Garza family delegated control and decision-making authority to Garza Sr. to manage the *Maddux* Litigation, to recoup any expenses incurred in that litigation, and to receive a percentage from any recovery in that litigation. We cannot conclude that the LPA served as an assignment to extend the 30% gross-recovery term to any recovery of the 108 acres—specifically any recovery of the 108 acres in the present litigation, as the Garzas argue.[7] And we cannot construe the petition or Garza Jr.'s testimony more broadly to include an assignment to Garza Sr. of any family claims for recovery of the 108 acres in any subsequent litigation. Garza Sr., thus, has no standing to sue as an assignee in this case. We sustain the Salinases' first issue.

### III. VALIDITY OF THE JUDGMENT AGAINST DECEASED DEFENDANTS

By their second issue, the Salinases challenge the validity of the judgment entered against Vicente Saenz, Hilaria Hernandez, and Olivia Salinas Perez, defendants who were sued individually and died prior to trial.[8] The Garzas assert that the judgment is valid because their estates continued to participate through the deceased parties'

---

[7] The Salinases do not challenge the trial court's Finding of Fact number 11 that provides, "[The Garzas] have incurred legal fees in related litigation that resulted from the failure to fully and properly convey the Subject Property to Plaintiffs and their predecessor-in-interest. Plaintiffs' share of the legal fees has totaled $607,143.22." Nothing in our analysis of the first issue should be construed as disavowing that finding or the judgment to the extent it awards such damages. *See* TEX. R. APP. P. 47.1.

[8] We note that Olivia Salinas Perez is identified as an appellant; Hilaria Hernandez and Vicente Saenz are not. However, because Hernandez's name and Saenz's name are on the judgment, we address this issue as being relevant to all three.

counsel; counsel did not file a motion to withdraw but, instead, continued to represent each estate during trial and now on appeal.[9]

## A.    Applicable Law

"It is well-settled that the estate of a decedent is not a legal entity and may not sue or be sued as such." *Supak v. Zboril*, 56 S.W.3d 785, 792–93 (Tex. App.—Houston [14 Dist.] 2001, no pet.) (citing *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975)); *see Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex. 1987). "A suit seeking to establish the decedent's liability on a claim and subject property of the estate to its payment should ordinarily be instituted against the personal representative or, under appropriate circumstances, against the heirs or beneficiaries." *Price*, 522 S.W.2d at 691. However, when the suit is not instituted against the personal representative, heirs, or beneficiaries of the deceased defendant, a judgment involving "the estate" may validly bind the personal representative of the estate if he appears and participates in the case in his official capacity as personal representative of the estate. *Price*, 522 S.W.2d at 692; *Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex. App.—Houston [1st Dist.] 1991, no writ); *see also Henson*, 734 S.W.2d at 649.

## B.    Discussion

---

[9] The Garzas do not dispute that Saenz, Hernandez, and Perez died prior to trial, that the Salinases filed suggestions of death for each of the three individuals on November 6, 2013, and that the clerk should have issued a scire facias for the administrator or executor or heir of each to appear and defend the suit. *See* TEX. R. CIV. P. 152 ("[W]here the defendant shall die [before the verdict], upon the suggestion of death being entered of record in open court, or upon petition of the plaintiff, the clerk shall issue a scire facias for the administrator or executor or heir requiring him to appear and defend the suit and upon the return of such service, the suit shall proceed against such administrator or executor or heir.").

10

Here, the suit was not instituted against the personal representative, heirs, or beneficiaries of any of the three deceased defendants. So, we must determine whether any personal representative of any of the three estates actively appeared and participated in the case. *See Price*, 522 S.W.2d at 692; *Dueitt*, 802 S.W.2d at 861; *see also Henson*, 734 S.W.2d at 649.

Relying on *Bernstein v. Portland Savings and Loan Association*, the Garzas argue that Richard D. Schell's legal representation of Saenz, Hernandez, and Perez throughout the trial proceedings and now on appeal is evidence of notice and of sufficient participation by each estate. *See* 850 S.W.2d 694, 699 (Tex. App.—Corpus Christi 1993, writ denied), *disapproved on other grounds by Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). Their reliance on *Bernstein* is misplaced.

In *Bernstein*, this Court concluded that Sidney T. Bernstein's personal representative, Zayle Bernstein, participated in the lawsuit by filing, through his attorneys, a motion for sanctions "individually and as Personal Representative of the Estate," by filing a supplemental memorandum in support of that motion, and by later filing motions and amended answers on behalf of the personal representative and the estate. *Id.* at 700. And the judgment set out that "Sidney T. Bernstein (actually, the personal representative of the Estate of Sidney T. Bernstein having been properly served by writ of scire facias) appeared by and through its attorney of record and announced ready for trial." *Id.*

We find no authority for the proposition that legal representation, without more, or continuation of the trial, by default, satisfies the personal representative requirement. The

11

representation relied upon by the Garzas in support of their position does not reflect the same quality of participation as that of the personal representative in *Bernstein*. *See id.*; *see also Miller v. Estate of Self*, 113 S.W.3d 554, 558 (Tex. App.—Texarkana 2003, no pet.) (determining that the temporary administrator's conduct was insufficient participation); *Supak*, 56 S.W.3d 794 (deciding that evidence of the decedent's son having been introduced to the jury as "representing that family" and testifying as a fact witness was insufficient to support the conclusion that he participated as representative of the estate); *Dueitt*, 802 S.W.2d at 861 (holding that a personal representative participated in the proceeding based on an affidavit of a co-executor of decedent's estate verifying the petition rather than the attorney's signature on the petition); *Bevers v. Brodbeck*, No. 07-04-0475-CV, 2006 WL 2795347, at *3 (Tex. App.—Amarillo 2006, pet. denied) (mem. op.). Unlike the present case, *Bernstein* focused on the fact that the deceased defendant had a personal representative other than his attorney. 850 S.W.2d at 699–700.

On November 6, 2013, Schell filed a suggestion of death for Saenz, Hernandez, and Perez.[10] The suggestion of death requested that a personal representative appear and defend the suit for their estates. It did not serve as Schell's appearance as personal representative for these estates. Moreover, as discussed below, we find no record support for the conclusion that Schell appeared and actively participated in the capacity of the estates' personal representative.

---

[10] The record shows that Perez died on May 9, 2003. The dates Saenz and Hernandez died were not located in the record.

No pleadings or other documents were filed identifying Schell as a personal representative of any of the estates. *See Henson*, 734 S.W.2d at 649. As the Garzas point out, on April 13, 2010, Schell did file a response to the Garzas' Bill of Review, setting out that he was the attorney for Saenz and Hernandez.[11] However, Schell did not represent that he was filing in the capacity of personal representative for Saenz's or Hernandez's estate.[12] In addition, the Garzas rely on an attachment filed in support of the Salinases' first amended plea in abatement or, alternatively, motion to dismiss for misjoinder. They claim that because the chart explicitly reflected that Schell represented Saenz and Hernandez, it supported their argument that estates of each deceased defendant participated sufficiently in the case. Yet the chart showed that Schell represented some owner/defendants, including Saenz and Hernandez, in a legal capacity; it did not show that he represented Saenz and Hernandez in the capacity of a personal representative of their estates.[13] Finally, the Garzas direct us to the notice of appeal and appellants' brief filed by Schell, as appellants' attorney. But both list only Perez, individually, as an appellant; Schell does not identify Saenz and Hernandez or their estates as appellants.

---

[11] The Bill of Review did not identify Perez as a defendant in its style or in the list of defendants for whom Schell provided legal representation.

[12] It is unclear from the record, whether Saenz or Hernandez was deceased at this time. And the Bill of Review does not identify Perez as a defendant in its style or in the list of defendants for whom Schell provided legal representation.

[13] We note that Perez was identified as a defendant but the "Represented by" column remained blank. Also, in several instances, when an estate was listed as a defendant and was represented by Schell, the following notation was added: "The suit must be against the named executor or administrator. If there is no administration, then the heirs must be named as party Defendants."

The confusing record before us simply does not support the conclusion that Schell participated sufficiently in this case as the purported representative of the estates of Saenz, Hernandez, or Perez to make the judgment binding against him in that capacity.[14] *See Price*, 522 S.W.2d at 692; *Bernstein*, 850 S.W.2d at 699–700; *see also Estate of C.M. v. S.G.*, 937 S.W.2d 8, 10–11 (Tex. App.—Houston [14th Dist.] 1996, no writ) (corrected op.) (distinguishing *C.M.* facts from *Bernstein* facts and concluding no representation). We sustain the Salinases' second issue.

## IV. VALIDITY OF THE JUDGMENT AGAINST THREE ESTATES AND ONE TRUST

By their third issue, the Salinases complain of the judgment entered against the estates of Francisca Vasquez, Eduardo Saenz, and Librada Salinas and against the Eduardo Saenz Children's Rev. Trust. They argue that the judgment against these defendants is void because the Garzas failed to sue the representatives or trustees of those defendants. We disagree.

As set out above, a suit against an estate "should ordinarily be instituted against the personal representative or, under appropriate circumstances, against the heirs or beneficiaries." *Price*, 522 S.W.2d at 691. Furthermore, "[t]he general rule in Texas (and elsewhere) has long been that suits against a trust must be brought against its legal

---

[14] The Garzas assert that even if the appellate record did not indicate sufficient participation in the trial court proceedings, it is inadequate to reverse the judgment against Perez because she died on May 9, 2003, prior to the dismissal of the original cause number and that record is not before us. They argue we must construe the missing record in their favor and assume that scire facias was issued in the original cause. We disagree. Although Perez died on May 9, 2003, prior to the dismissal of the original cause number, the suggestion of death was not filed until November 6, 2013, after which scire facias should have issued. In other words, the record from the relevant time is before us.

14

representative, the trustee." *Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) (per curiam).

The Garzas' fourth amended petition set out the following:

> Defendant the Estate of Francisca Vasquez was served with process by serving its Executor, Hector E. Vasquez, who resides in Mission, Hidalgo County, Texas. Said individual has answered herein, and no further service of process is needed.
>
> . . .
>
> Defendant the Estate of Eduardo Saenz, Deceased, has been served with process by serving its representative, Maria Irma C. Saenz who resides in La Joya, Hidalgo County, Texas. Maria Irma Saenz has answered herein, and no further service of process is needed.
>
> Defendant Eduardo Saenz Children's Rev. Trust has been served with process by serving its trustees, Eduardo Saenz, Jr. and Norma Torres, who reside in La Joya, Hidalgo County, Texas. Said trustees have answered herein, and no further service of process is needed.
>
> . . .
>
> Defendant the Estate of Libradia Salinas, Deceased, was served with process by serving its Executor M. Elva S. Delgado, who resides in La Joya, Hidalgo County, Texas. Said individual has answered herein, and no further service of process is needed.

Because the Garzas instituted suit against the representatives of the estates of Francisca Vasquez, Eduardo Saenz, and Librada Salinas and against the trustee for the Eduardo Saenz Children's Rev. Trust, we cannot conclude that the judgment is invalid as to those defendants. *See id.*; *Price*, 522 S.W.2d at 691; *Casillas*, 79 S.W.3d at 590. We overrule the Salinases' third issue.

## VI. INDISPENSABLE PARTY-DEFENDANTS

By their fourth issue, the Salinases contend that the trial court abused its discretion

15

when it denied their plea in abatement or, alternatively, their motion to dismiss because the Garzas did not join indispensable party-defendants who held mineral ownership interests in the subject property. They argue that the evidence fails to support the trial court's ruling.

On October 8, 2014, the trial court heard the Salinases' plea and alternative motion for misjoinder. *See* TEX. R. CIV. P. 39(a) (providing for joinder of persons needed for just adjudication). The law is well settled; the Salinases, who urged the plea, had the burden of proving their allegations in the trial court.[15] *See Flowers v. Steelcraft Corp.*, 406 S.W.2d 199, 199 (Tex. 1966); *Bernal v. Garrison*, 818 S.W.2d 79, 82 (Tex. App.—Corpus Christi 1991, writ denied). The Salinases also had the burden to provide a sufficient appellate record, showing error that requires reversal. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam).

In this appeal, the Salinases have not provided us with a transcript of the October 2014 hearing, and they have not directed us to any supporting evidence that was offered at the hearing that showed certain parties that the Garzas did not join were indispensable. *See id.* On this insufficient record, it is impossible for us to determine

---

[15] To establish that a person is indispensable, the movants, the Salinases in this case, must have shown that: (1) the person's presence was needed to adjudicate the dispute and accord complete relief to those already parties; (2) his ability to protect his interests may be impaired or impeded if he was absent; or (3) his absence left one already a party subject to a substantial risk of multiple or inconsistent obligations. *See Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 179–80 (Tex. App.—San Antonio 2008, pet. denied) (citing TEX. R. CIV. P. 39(a); *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 162 (Tex. 2004)). The Salinases attached one exhibit to their plea and motion. It was titled "Analysis of Party Defendants." The plea described the exhibit as "[a] partial listing of owners" that reflected which owners were parties to the suit and which owners had never been joined.

what evidence the parties offered regarding the necessity or feasibility of the remaining mineral interest owners. Accordingly, we overrule the Salinases' fourth issue.

## VII. STATUTE OF LIMITATIONS

### A. Misnomer

By the fifth issue, the Salinases contend that the four-year statute of limitations[16] ran before Juan Lino Garza Jr. and Elma Iren Garza, co-trustees of Trusts A-1 and A-2, joined the lawsuit as plaintiffs in 2014. They acknowledge that the co-trustees, as successors in title to the interests originally conveyed by Eleuterio to Guadalupe, had standing to assert a claim under the 1942 deed. However, the Salinases contend that because the Juan Lino Garza Sr. Trust expired in 2004 and the eligible co-trustees of Trusts A-1 and A-2 did not join the suit until 2014, their claims were barred by limitations.

The Garzas respond, arguing, among other things, that their amended petition in 2014 corrected a misnomer regarding the Garza Trusts and, with the error corrected, the amended pleading related back to the original date of filing. The Garzas assert that the Salinases cannot take advantage of a cured misnomer in the pleadings when they actively participated in the litigation for nearly a decade without raising the issue and did not appear confused, disadvantaged, or even impacted by the misnomer. We agree with the Garzas.

When a plaintiff misnames itself in a pleading, but the correct parties are served and involved in the suit, the matter is a simple misnomer and does not negate the

---

[16] The limitation periods for the causes of action brought are not disputed.

17

plaintiff's standing and does not implicate the statute of limitations. *In re Greater Houston Orthopedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (orig. proceeding) (per curiam); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347–48 (Tex. App.—Texarkana 1998, no pet.) (explaining that when a misnomer occurs, the statute of limitations does not apply when "the correct parties are involved" and "received notice of the suit"). When the error is corrected, the amended pleading relates back to the original date of filing. *In re Greater Houston Orthopedic Specialists*, 295 S.W.3d at 326.

During trial, Garza Jr. testified as follows:

Q. [Counsel for the Salinases] When were those mineral interests conveyed into A-1 and A-2?

A. [Garza Jr.] Those minerals were actually originally in the Garza Energy Trust, which was conveyed by the—well, it was gifted by the Parents Trust to the Garza Energy Trust in 1994 and '95. Then during that interim, Juan Lino Garza[] Sr., gifted those minerals into the Juan Lino Garza Energy Trust[s] A-1 and A-2.

. . .

Q. All right. So, is there any reason then why Trust[s] A-1 and A-2 were not plaintiffs in 2001 when this action was first brought?

A. When this action was first brought, the minerals were under the Garza Energy Trust, a holding trust.

. . .

Q. All right. So, whatever mineral interests were in the Garza Energy Trust, upon termination of that trust, those passed to Trust[s] A-1 and A-2?

A. Correct.

Q. All right. So, that would have been in 2004; is that right?

18

A.    Yes.

When the case was initially filed in 2001, the Garza Energy Trust was properly named as a plaintiff. Similarly, when the case went to trial in 2014, Trusts A-1 and A-2 were properly named as plaintiffs. *See Massad v. Bumpus*, 146 S.W.2d 1073, 1075 (Tex. Civ. App.—Texarkana 1940, writ dism'd) (setting out that it has long been held that a covenant of general warranty runs with the land) (citing *Flanniken v. Neal*, 4 S.W. 212, 214–15 (Tex. 1887)). The Salinases offered into evidence a chart that summarized the parties named in the case since 2001, the year the Garzas filed suit. The chart confirmed Garza Jr.'s testimony that individuals representing the respective trusts were involved since the case began. The Salinases do not complain that the wrong plaintiffs were involved in the suit, that they lacked notice of the complaints against them, or that they were otherwise misled or disadvantaged by the pleadings. *See Pierson*, 959 S.W.2d at 347–48. The correct parties were served and were involved in the suit, responding to discovery, taking depositions, designating expert witnesses, and participating in pretrial hearings prior to correcting the misnomer in their petition. The Salinases did not challenge the misnomer in the trial court and have not shown that the pleading error has had any detrimental effect on the case.

The Garzas do not dispute that it would have been prudent to update the parties in their pleadings to reflect Trusts A-1 and A-2 as soon as the Garza Energy Trust terminated in 2004. However, "in a case like this, in which the plaintiff misnames itself, the rationale for flexibility . . . applies with even greater force." *In re Greater Houston Orthopedic Specialists*, 295 S.W.3d at 326. Allowing for such flexibility, we conclude that

19

the Garzas' initial pleading tolled the statute of limitations, and the subsequent amendment of the petition, which did not add new parties but corrected a misnomer, relates back to the date of the original petition. *See Pierson*, 959 S.W.2d at 347.

**B.     The *Maddux* Litigation**

During oral argument, the Panel raised the question of whether the Garzas' claims were barred by the statute of limitations based on language in this Court's opinion in the *Maddux* Litigation. *See Maddux*, 988 S.W.2d at 287–88. Specifically, the Panel questioned whether the Garzas and their predecessors-in-interest were on notice of a title defect as early as 1982 when defendants, including Guadalupe Garza, in an earlier litigation agreed upon a mineral deed that clarified and confirmed mineral interests out of Shares 13 and 15, or in 1986 when certain mineral interests were conveyed from an earlier Garza trust to the Garza Energy Trust which placed the disputed acreage within Share 15. *See id.* Although addressed during oral argument and in requested post-submission briefing, we do not reach this limitations argument here.

In this case, the trial court made the following Finding of Fact number 10: "Plaintiffs did not acquire knowledge of the fact that the Subject Property was not fully and properly conveyed to them and their predecessors-in-interest until appeals were exhausted in the *Maddux* Suit. There was no failure of title until the appeals process was completed." On appeal, the Salinases do not challenge this finding.

Based on our *Maddux* opinion, which became final when the petition for review was denied in 1999, the present suit was timely filed in 2001 with the Garza Energy Trust as a plaintiff. Nowhere do the Salinases contend that the Garzas were on notice of a

20

failure of title prior to 1999. And they neither argue that *Maddux* is the "law of the case" nor challenge the sufficiency of the evidence supporting Finding of Fact number 10. Rather, the Salinases' brief sets out in its background section that title failed at the end of the *Maddux* Litigation and, in support of its limitations issue, quotes testimony from Frank Enriquez, one of the Garzas' experts. Enriquez testified that in 1999 the supreme court decided that the 108 acres did not belong to the Garza family, *see Maddux*, 988 S.W.2d at 287–91, and agreed that "it would seem" that a lawsuit brought in 2014 would be beyond the applicable statute of limitations.

Nonetheless, "[w]hen findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as the verdict of a jury. Findings of fact which are unchallenged are binding on the appellate court." *De Los Santos v. De Los Santos*, 794 S.W.2d 528, 529 (Tex. App.—Corpus Christi 1990, no writ) (citing *Katz v. Rodriguez*, 563 S.W.2d 627, 630–31 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)). Because Finding of Fact number 10 is unchallenged, it is binding on this Court, and we cannot disregard it. *See id.*

Moreover, "[a]ny unchallenged finding of fact which will support the judgment will preclude a reversal of the case." *Id.* Conclusion of Law number 5 holds: "All pertinent statute of limitations were tolled and began to run once appeals were exhausted in the *Maddux* suit. That is when failure of title occurred and when the Supreme Court of Texas said title was cleared."[17] The unchallenged Finding of Fact Number 10 supports the trial

---

[17] The trial court cited *Coastal Oil & Gas Corp. v. Garza Energy Trust* in support of this conclusion. *See* 268 S.W.3d 1, 5–6 & n.8 (Tex. 2008) (noting that disagreements among the Salinases and the Garzas

court's conclusion of law that limitations was tolled and, therefore, supports the judgment. *See id.* As such, we are precluded from reversing on this basis. *See id.*

## C. Summary

Because the Garzas' misnomer did not implicate the statute of limitations and because we are bound by unchallenged Finding of Fact number 10, a finding that supports the judgment, we overrule the Salinases' fifth issue.

## VII. DAMAGES

### A. Basis for the Damages Awarded

By their sixth issue, the Salinases contend that the Garzas' claims for breach of warranty, breach of covenant against encumbrances, and breach of implied covenants were treated together and are governed by the same legal defenses. Based on this premise, the Salinases claim that the trial court erred in awarding damages because in a breach-of-warranty-of-title action, damages are limited to, at most, the compensation paid for the 108 acres lost in the *Maddux* Litigation. *See Sun Exploration and Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) ("The proper measure of damages for breach of the covenants of seisin and warranty of good title is the consideration paid for the conveyance."). They also assert that the judgment should be reversed because the Garzas "failed to put on any evidence of what amount was paid for the 108 acres."

---

over their respective interests in Share 13 were not resolved until 1999 when the *Maddux* opinion was issued) (citing *Garza v. Maddux*, 988 S.W.2d 280 (Tex. App.—Corpus Christi 1999, pet. denied) (affirming summary judgment in the Juan Lino Garza suit)).

In response, the Garzas argue that because the Salinases have not challenged all grounds that support the damage award, specifically their trespass-to-try-title ground, the issue should be overruled. We agree with the Garzas.

We must affirm a trial court's judgment if it can be upheld on any legal basis supported by the evidence. *Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 880–81 (Tex. App.—Fort Worth 2003, pet. denied); *San Antonio Press, Inc. v. Custom Bilt Mach.*, 852 S.W.2d 64, 65 (Tex. App.—San Antonio 1993, no pet.). "When a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm. If the rule were otherwise, an appellant could avoid the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged." *San Antonio Press*, 852 S.W.2d at 65; *see Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Nichols v. Byrne*, No. 13-97-456-CV, 1999 WL 58570, at *1 (Tex. App.—Corpus Christi Jan. 28, 1999, no pet.) (mem. op.).

The Garzas pleaded and sought damages for four distinct causes of action, including breach of warranty of title, breach of covenant against encumbrances, breach of implied covenants, *and* trespass to try title. The final judgment found the Salinases liable to the Garzas "for breach of warranty of title, breach of covenant against encumbrances, breach of implied covenants, *and* trespass to try title." (Emphasis added.) So, even assuming without deciding that the breach claims should be treated as one, because the Salinases have not challenged damages based on the Garzas' trespass-to-try-title claim, they have not attacked every independent basis on which the damages

23

could have been awarded. *See San Antonio Press*, 852 S.W.2d at 65. Moreover, they do not argue that the purported damage limit applies to trespass-to-try-title damages. Therefore, we must determine whether this legal basis—trespass to try title—supports the judgment and the damages awarded in this case. *See id.*

While the judgment found the Salinases liable for trespass to try title, the trial court, in its conclusions of law, did not expressly identify trespass to try title as a basis for its damage award. Instead, its conclusions set out that the Salinases breached the deed's warranty of title, the covenant against encumbrances, and the implied covenants. However, in unchallenged Finding of Fact number 7, the trial court found that "[the Garzas] and their predecessors-in-interest were, and are, owners and/or persons entitled to clear title and possession of 271 acres within Share 13"; in unchallenged Finding of Fact number 8, it found that "[a]side from the 173 acres out of Share 13 that were properly conveyed to [the Garzas] and their predecessors-in-interest, [the Salinases] and their predecessors-in-interest have used and occupied all of Share 13 and have entered into oil and gas leases with certain oil companies that have drained valuable minerals from Share 13"; and in unchallenged Finding of Fact number 9, it found that "[the Garzas] have a 1/8 interest in the 108 acres in Share 13 that were not properly conveyed." *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (setting out ways "[t]o prevail in a trespass-to-try-title action," including "establish[ing] superior title out of a common source"). Furthermore, in Conclusion of Law number 7, the trial court concluded that "[the Garzas]

24

have sustained actual damages in the amount of $3,062,129.43, for which [the Salinases] are jointly and severally liable."[18]

The unchallenged findings, which we cannot disregard, support the conclusion that the Garzas sustained actual damages based on their trespass-to-try-title claim. *See De Los Santos*, 794 S.W.2d at 529. The judgment correctly included "trespass to try title" as a legal theory that provided a basis for the judgment and for the damages awarded.[19] *See Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 519 (Tex. App.—Dallas 2014, no pet.) (providing that "the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence; incorrect conclusions of law [or in this case omitted conclusions of law] will not require reversal if the controlling findings of fact will support a correct legal theory"); *see also Mays v. Mays*, No. 13-05-558-CV, 2007 WL 776684, at *2 (Tex. App.—Corpus Christi Mar. 15, 2007, pet. denied) (mem. op.) (same). Because the Salinases did not challenge the judgment on the basis of this independent ground, we overrule the sixth issue.

## B. Expert Testimony

By their seventh issue, the Salinases argue that the testimony of the Garzas' expert "Richard Cortez on damages was not reliable," "would not have survived a *Daubert*

---

[18] Lost rents and royalties are available in a trespass to try title suit and in a mineral trespass. *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 177 (Tex. App.—El Paso 2014, pet. denied); *Musquiz v. Marroquin*, 124 S.W.3d 906, 912 (Tex. App.—Corpus Christi 2004, pet. denied); *United Sav. Ass'n of Tex. v. Villanueva*, 878 S.W.2d 619, 623 (Tex. App.—Corpus Christi 1994, no writ); *see also* TEX. R. CIV. P. 783(f). The Garzas' expert witness Richard Cortez testified regarding royalty payments that would support a damage award based on a trespass-to-try-title ground.

[19] The Salinases do not complain of the amount of actual damages awarded for trespass to try title. That issue is not before us. *See* TEX. R. APP. P. 47.1.

25

challenge," and "[a]s such it is not evidence of damages." Specifically, the Salinases contend Cortez relied on foundational data provided by the Garzas "who got it from a website operated by a private company." They allege that Cortez himself "had no prior experience with that website and did no investigation of how such data was obtained or whether it was reliable." This is a challenge to the admissibility of Cortez's testimony based on his foundational data. *See, e.g.*, *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998) ("*Daubert's* focus is on the trial court's discretion, when faced with an objection to scientific evidence, to admit or exclude such evidence before or during the trial.").

The Texas Supreme Court has concluded that a *Daubert-Robinson* challenge is required "only when a challenge to expert testimony questions the underlying methodology, technique, or foundational data used by the witness." *Coastal Transport, Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 229 (Tex. 2004) (citing *Mar. Overseas Corp.*, 971 S.W.2d at 411); *see Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 711–30 (Tex. 1997); *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 554–56 (Tex. 1996); *see also Moore v. Moore*, 383 S.W.3d 190, 199–200 (Tex. App.—Dallas 2012, pet. denied) (applying *Maritime* proposition at bench trial). Such a challenge "must be timely made in order to allow the court to exercise its gatekeeper function." *Coastal Transport*, 136 S.W.3d at 229 (citing *Mar. Overseas Corp.*, 971 S.W.2d at 411).

In *Coastal Transport*, our supreme court explained:

When the expert's underlying methodology is challenged, the court "necessarily looks beyond what the expert said" to evaluate the reliability of the expert's opinion. . . . *We therefore conclude that when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis.* However, when the challenge is restricted to the face of the record, for example, when expert testimony is speculative or conclusory on its face, then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility.

136 S.W.3d at 233 (emphasis added) (internal citations omitted).

Here, the Salinases do not argue that Cortez's testimony was speculative, conclusory, or otherwise non-probative on its face. Rather, they attack Cortez's testimony as to the foundational data upon which Cortez relied.

The Salinases, however, did not file a pretrial *Daubert* motion to strike Cortez's testimony, and they did not make an oral objection during trial. They cross-examined Cortez regarding the data he relied upon but did not object to or secure a ruling on the reliability of Cortez's trial testimony. Because no timely objection was made before or during trial, the Salinases' challenge to Cortez's foundational data has been waived.[20] *See* TEX. R. APP. P. 33.1. We overrule the seventh issue.

## VIII. JOINT AND SEVERAL LIABILITY

### A. The Trespass-Claim Basis

By their eighth issue, the Salinases assert that joint and several liability may only

---

[20] To the extent we could construe the Salinases' argument as a challenge to the legal sufficiency of the evidence supporting Cortez's testimony, we find that argument has been waived because it is not properly before the Court. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

be imposed under Chapter 33 of the Texas Civil Practice and Remedies Code for tort liability, which was not pleaded by the Garzas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1) (West, Westlaw through 2017 1st C.S.) (apportioning responsibility among those responsible for damages in "any cause of action based on tort"). In response, the Garzas claim that the trial court properly held the Salinases jointly and severally liable as parties to the trespass of the Garzas' property. Again, we agree with the Garzas.

In a trespass-to-try-title case, "[t]he imposition of joint and several liability turns upon the actions of the joint-trespassers as parties to the trespass," not on the extent of their individual violation. *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 180–81 (Tex. App.—El Paso 2014, pet. denied). In *Victory Energy*, the Oz Gas Corporation filed a trespass-to-try-title suit against Victory Energy Corporation and others. *See id.* at 159–69. Oz held a leasehold interest in 160 acres of land and claimed that the defendants trespassed by operating wells on the property. *Id.* at 168–69. However, a third party had purported to convey an interest to the defendants. *Id.* The trial court granted summary judgment on the defendants' liability and then held a bench trial on damages. *Id.* at 169. The defendants were held jointly and severally liable for the actual damages resulting from their trespass. *Id.* On appeal, the defendants challenged the imposition of joint and several liability, claiming that the trial court erred by failing to impose liability specific to each party or well. *Id.* at 180.

The Eighth Court of Appeals rejected this argument, reiterating the century-old rule that "all who aid or abet the commission of a trespass are liable jointly or severally." *Id.* (citing *Cunningham v. Coyle*, 2 Willson 371, 1884 WL 8399, at *1 (Tex. Ct. App. 1884)).

28

The court held: "The imposition of joint and several liability turns upon the actions of the joint-trespassers as parties to the trespass. Thus, the legal or factual insufficiency of the evidence showing whether appellants trespassed as to both wells or benefitted is not directly relevant to the issue of whether the damages may be assessed jointly and severally given that personal participation is not required." *Id.* at 180–81.

Similarly, the trial court found that the Salinases were parties to the trespass. Margarito Salinas testified regarding the operation of wells on Share 13, confirming that Eleuterio Salinas's descendants executed and profited from the oil and gas leases on Share 13. The Garzas presented detailed production data from the U.S. Data Library— a resource that aggregates information from the Texas Railroad Commission—regarding the producing wells on the Salinases' portion of Share 13. Cortez provided expert testimony, a report, and calculations regarding the production and royalties collected by the Salinases for oil and gas wells on Share 13. The Salinases offered no controverting data or expert testimony.

As in *Victory Energy*, the trial court held all those who participated in the trespass— i.e., the Salinases in this case—jointly and severally liable. The Salinases were parties to trespass; specific findings regarding the extent of each trespasser's individual participation were not necessary. *See id.*

We conclude that the trial court did not err in holding the Salinases jointly and severally liable.[21] We overrule the Salinases' eighth issue.

---

[21] In their reply brief, the Salinases claim that there is no evidence supporting any cause of action for which joint and several liability would apply. However, they did not present this complaint in their brief

29

## B.  Evidence of Portion of Estate Inherited Not Required

By their final issue, the Salinases claim that the Garzas failed to offer any evidence of what each of the Salinases received from Eleuterio's estate.  However, the Salinases base this argument on the proposition that, in a suit for breach of warranty, liability of each heir/descendant of Eleuterio Salinas is limited to the value of the interest each received. We have concluded that the basis for damages in this case could be controlled by the Garzas' uncontested trespass-to-try-title claim, for which joint and several liability applies. *See id.*  Therefore, failure to offer any evidence regarding the extent of the inheritance of each of the Salinases is not relevant.  *See id.*  We overrule the Salinases' ninth issue.

## IX.  CONCLUSION

We affirm in part; reverse and render judgment in part that the Garzas take nothing from Vicente Saenz, Hilaria Hernandez, and Olivia Salinas Perez, and dismiss that portion of the appeal; and reverse and render judgment in part that Garza Sr. take nothing on his claims against the Salinases.

GINA M. BENAVIDES
Justice

Delivered and filed the 27th
day of November, 2018.

---

on appeal but raised it for the first time in their reply brief.  The appellate rules of procedure do not allow a reply brief to be used to raise new issues.  *See Dallas Cty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) (op. on reh'g).  This argument is not properly before us.  *See id.*; *see also ZZ & Z Props., Ltd v. Jang*, No. 13-16-00043-CV, 2018 WL 286256, at *2 (Tex. App.—Corpus Christi Jan. 4, 2018, pet. denied) (mem. op.).